FRAZIER *v.* FORD MOTOR COMPANY.

ARBITRATION AND AWARD—PLEADING—COLLECTIVE BARGAINING AGREE-
MENT.

> Order granting motion to dismiss after answer filed but before
> trial on merits in action of assumpsit against employer and
> retirement board for loss of wages after adverse ruling on
> arbitration of reason for discharge by defendant employer is
> affirmed by CARR and KELLY, JJ., because a court is reluctant
> to pass judgment upon an arbitrator's decision, because there
> is an absence of facts pleaded pertaining to bad faith, ar-
> bitrary action, or fraud upon the part of the umpire, and
> because the arbitrator's investigation was conducted within
> the strict confines of the collective bargaining agreement under
> which plaintiff sought to enforce rights, and by BLACK and
> EDWARDS, JJ., on ground that pleading was either conclusion-
> ary or ambiguous, and that minimum standards set forth by
> the contract as to the arbitrator's hearing had not been violated
> (CL 1948, § 645.1 *et seq.*).

DETHMERS, C. J., and KAVANAGH and SOURIS, JJ., dissenting.

Appeal from Wayne; O'Hara (Chester P.), J.
Submitted January 11, 1961. (Docket No. 72, Calen-
dar No. 48,426.) Decided November 30, 1961. Re-
hearing denied March 15, 1962.

Assumpsit by Pearley Marvin Frazier against
Ford Motor Company-UAW Retirement Plan
Board of Administration and the Ford Motor Com-
pany, a Delaware corporation, for benefits under
physical disability provision in retirement plan, for
loss of wages, and for declaration of rights under,

---

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Arbitration and Award § 135 *et seq.*

retirement plan following adverse ruling on arbitration of reason for discharge. Action dismissed on motion before trial on merits. Plaintiff appeals. Affirmed.

*Bernard J. Fieger,* for plaintiff.

*William T. Gossett* (*Richard B. Darragh, Robert W. Scott,* and *James R. Jackson,* of counsel), for defendants.

*Harold A. Cranefield, Redmond H. Roche, Jr.,* and *Gordon A. Gregory,* for Ford-UAW Retirement Plan Board of Administration.

SOURIS, J. (*dissenting*). This matter is before us by claim of appeal from an order dismissing plaintiff's declaration on defendants' motions after answer but before trial on the merits.

Plaintiff had been employed by the defendant Ford Motor Company for 36 years when he was discharged for stealing company property. The labor union which represented defendant company's employees filed a grievance in plaintiff's behalf with the company and processed that grievance in conformance with the collective bargaining agreement then in force between the union and the company through all grievance procedures to and including a hearing before the impartial umpire provided by the agreement for final arbitration of grievances. The umpire's award was adverse to plaintiff.

Several years after the umpire's adverse award, plaintiff made application for benefits under an agreement between the union and the company providing for monthly retirement benefits for qualified employees. The agreement included provision for payment of such benefits in the event of total and permanent disability, and it was plaintiff's

claim that he was physically disabled from continued employment. The defendant retirement board denied plaintiff's application on the ground that he was ineligible for benefits by virtue of his prior discharge by the defendant company.

Plaintiff's declaration, as amended by leave of the trial court, seeks damages in assumpsit for loss of wages from the time of his discharge to the date he claims he became eligible for retirement benefits and for loss of retirement benefits from the date of his application therefor to the commencement of suit. Ancillary to the claim for money damages in assumpsit, plaintiff seeks a declaration of the extent of his rights under the agreement between the union and the defendant company providing for retirement benefits.

Plaintiff's theory, as reflected in his amended declaration, is that his discharge by defendant company was wrongful because, contrary to the company's claim, he did not steal its property and, indeed, was acquitted by a jury in a criminal case brought against him on that charge; that the umpire's adverse determination is a nullity because of fraud, bad faith, and arbitrary action by the umpire in the conduct of the arbitration proceeding; that the defendant retirement board's adverse determination of his application for retirement benefits is a nullity because it was based solely upon his wrongful discharge by defendant company; and that he is, therefore, entitled to back pay and to retirement benefits, past and future. In short, in order to assert his claims upon the employment contract and the retirement agreement, plaintiff sought to attack the umpire's award collaterally on the ground of fraud, bad faith, and arbitrary action in this suit at law in assumpsit.

Dismissal of the amended declaration was based upon the trial judge's determination that plaintiff's allegations were either conclusionary in form or

otherwise legally insufficient as allegations of fraud, bad faith, or arbitrary action. It is evident from the opinions filed below that the trial judge approached his task on the premise that had plaintiff properly pleaded such conduct, his declaration would have set forth a cause of action cognizable at law. With this premise we do not agree.

An arbitration award, either at common law or as provided for by statute (CL 1948, § 645.1 *et seq.* [Stat Ann § 27.2483 *et seq.*]), bars recourse to the courts for judicial determination of the dispute submitted to arbitration so long as the presumptively valid award is permitted to stand. "Courts of justice have long manifested a strong inclination to support the decisions of arbitrators, who are judges of the parties' own choosing." *Fennimore* v. *Childs,* 6 NJL 386. Werne[1] puts it this way:

"A person who initiates arbitration under a collective agreement may not challenge the arbitrator's jurisdiction after an adverse award and by recourse to judicial process remedy the identical grievance.
\*   \*   \*

"The general rule at common law is that an arbitration award, rendered under an agreement that it is to be final and binding, is not appealable to any court. However, there are certain exceptions. For example, where an award is obtained by fraud, where it is outside the scope of the submission, or where there is some collusion or other irregularity on the part of the arbitrators, a court may vacate an award."

In short, arbitration awards are regarded as final and binding upon the parties as the judgment of a court.

We have found only one prior case before this Court in which a labor arbitration award was sought

---

[1] 2 Werne, Law and Practice of the Labor Contract (1957), § 17.35.

to be avoided.[2] But there have been many such cases involving commercial arbitration awards. Many of those prior cases involved statutory arbitration proceedings, but others were proceedings governed by the common law, as is this.[3] In those cases, we have held that the power to vacate awards, on certain limited grounds, reposes in equity.

*Port Huron & Northwestern R. Co.* v. *Callanan,* 61 Mich 22, is a leading case on the subject. Chief Justice CAMPBELL, writing for the Court, discussed vacation of arbitration awards in the following terms (p 26):

"There is power in a court of equity to relieve against awards in some cases where there has been fraud and misconduct in the arbitrators, or they have acted under manifest mistake, and perhaps in some defined and undefined cases. But it is evident that there are great objections to any general interference by courts with awards. They are made by a tribunal of the parties' own selection, who are, usually at least, expected to act on their own view of law and testimony more freely and less technically than courts and regular juries. They are also generally expected to frame their decisions on broad views of justice, which may sometimes deviate from the

---

[2] The case is *Carr* v. *Kalamazoo Vegetable Parchment Co.,* 354 Mich 327. Like the case at bar, it was a suit by an employee in assumpsit for back wages for a period during which plaintiff was unemployed following his unlawful discharge. An arbitrator had upheld his contention that his discharge was unlawful, but the award of the arbitrator went beyond the contractual submission to him of this bare issue of the legality of the discharge and ordered the plaintiff's reinstatement, but without back pay. This Court reversed dismissal of the suit on motion on 2 grounds: (1) the ground for dismissal (estoppel) by the trial court was not one which could be raised on motion within the purview of Court Rule No 18 (1945); and (2) an arbitration award which, on its face, goes beyond the scope of the issues submitted for arbitration is a nullity and the award will not bar an action at law relating to an issue not within the scope of the submission to arbitration. In the case at bar, plaintiff makes no claim that the umpire's award exceeded the scope of the dispute submitted to him for arbitration.

[3] CL 1948, § 645.1 *et seq.* (Stat Ann 1943 Rev § 27.2483 *et seq.*), expressly exempts arbitration of labor disputes from its provisions.

strict rules of law. It is not expected that after resorting to such private tribunals either party may repudiate their action and fall back on the courts. And equity, on whatever pretext it may intervene in such cases, does so upon the reason that the tribunal has not really acted within the lines of the duty laid upon it, and has not in fact carried out the agreement under which it has obtained authority to proceed."

In *Palmer* v. *Patrons' Mutual Fire Ins. Co.*, 217 Mich 292, a case bearing remarkable procedural similarity to the case at bar, plaintiff sought judgment in assumpsit for a loss on an insurance policy after an adverse arbitration award against him. Mr. Justice STEERE, writing for the Court, said (p 299):

"In the instant case plaintiff submitted to an award and exhausted that remedy. Leaving the award against him standing, he commenced an action at law in assumpsit to recover on his policy of insurance, and when the award was interposed as a defense sought to attack it collaterally on the ground of fraud. This he may not do. His primary remedy is by direct proceedings against the award in a court of equity where rests special jurisdiction in matters of fraud, accident, mistake, et cetera."

Quoted in the Court's opinion in the *Palmer Case* (p 299) is the following from *Michels* v. *Western Underwriters' Ass'n*, 129 Mich 417, 425:

"A court of equity cannot abdicate its duty or submit its conscience to what a jury might do in any case, not even that of an individual against a corporation. Under the Constitution and laws of this State, a court of law is not the proper forum to determine whether an award under an arbitration, agreed to by the parties thereto, was corruptly and fraudulently made. Courts of equity alone are clothed with the power to set them aside."

See, also, *Jackson* v. *State Mutual Rodded Fire Ins. Co.,* 217 Mich 301.

Although it might appear that our conclusion that plaintiff may not bring this suit at law in assumpsit while the adverse arbitration award still stands compels our affirmance of its dismissal, we are not so inclined. *Michels* v. *Western Underwriters' Ass'n, supra,* suggests an alternative to dismissal which we believe to be a preferable disposition of this matter. In *Michels,* as in this case, suit in assumpsit was first started. Pleas were interposed by the defendants claiming that a prior award adverse to plaintiff barred the action. The court ruled the award was binding and could only be set aside in a court of chancery. Thereupon, the law action was abated while Michels brought the suit in equity which set aside the award and from which the cited appeal was taken. Had the trial judge in the case at bar concluded that plaintiff's allegations were substantively sufficient to allege fraud, et cetera, we are convinced that ultimately he would have transferred this suit to the chancery side of the court or, as was done in *Michels,* abated it in favor of a separate suit in equity. Accordingly, it becomes appropriate to determine what specific grounds will justify equity's vacation of an arbitration award and whether the allegations made in plaintiff's amended declaration would be legally sufficient to support an equitable action therefor.

Even in cases involving commercial arbitration awards, we have indulged every presumption in favor of their fairness and imposed a heavy burden of proof upon the parties seeking to set them aside by requiring proofs that are clear and strong. *Brush* v. *Fisher,* 70 Mich 469, 473 (14 Am St Rep 510). Rapid and certain disposition by arbitration of labor disputes is at least as much required by our industrial economy as is the rapid and certain disposition

by arbitration of commercial disputes. Indeed, the
complexity of the relationship between labor and
management and the impact upon our whole society
of economic combat between these 2 groups requires
extreme care when arbitration awards affecting their
disputes are sought to be vacated. But arbitral in-
fallibility does not exist in reality any more than
does judicial infallibility and, just as was the case
with commercial arbitration, during the relatively
brief history of labor arbitration, several grounds
for equitable relief against such arbitration awards
have been recognized by the courts which have had
occasion to consider the matter and by other legal
authorities.

Updegraff and McCoy tell us that, because an ar-
bitration award is akin to both a contract and a judg-
ment, the ground urged for relief against an award
"must be such as would be good both for attack upon
a judgment and for relief against the terms of a
contract."[4]       They list the judicially recognized
grounds as: "(1) fraud on the part of the arbitrator;
(2) fraud or misconduct of the parties affecting the
result; (3) gross unfairness in the conduct of the
proceeding; (4) want of jurisdiction in the arbitra-
tor; (5) violation of public policy; (6) want of
entirety in the award." Their comment upon these
6 grounds of attack is set forth below, footnote cita-
tions only being omitted therefrom:

"Positive fraud on the part of the arbitrator, as
for example, the acceptance of a bribe, will of course
invalidate the award just as similar conduct on the
part of a judge would lead to the setting aside of a
judgment. Fraud on the part of one of the parties,
as in fabricating evidence, or misconduct in bringing
improper influence to bear on the arbitrator, would

---

[4] Updegraff & McCoy, Arbitration of Labor Disputes (1946), p 126.
For an interesting discussion of the nature of arbitration awards in
labor disputes, see pp 124, 125.

have the same effect. Gross unfairness in the conduct of the proceedings, preventing the parties from having a fair hearing, likewise would render the award subject to impeachment. If the arbitrator exceeds the power conferred on him, or acts after his power has expired, his award is void. Or if he requires a party to do or refrain from an act in violation of public policy, the award will not be enforced. For example, an award during World War II that required a company to pay double time for work on Sunday, in violation of Executive Order 9240,[5] would have been unenforceable. And finally, the award may be impeached if it violates the rule that it must be entire, that is, make final disposition of all issues submitted.

"All of these grounds of attack on an award would be good if the attack were against a judgment or for relief against a contract. But certain other grounds that would be sufficient in an appeal from a judgment would not be grounds for impeaching an award, for the reason that the contractual element is present in the award. Thus, the fact that the arbitrator made erroneous rulings during the hearing, or reached erroneous findings of fact from the evidence, is no ground for setting aside the award, because the parties have agreed that he should be the judge of the facts. Even his erroneous view of the law would be binding, for the parties have agreed to accept his view of the law. Were it otherwise in either of these cases, arbitration would fail of its chief purpose; instead of being a substitute for litigation it would merely be the beginning of litigation. Error of law renders the award void only when it would require the parties to commit a crime or otherwise to violate a positive mandate of the law."

Courts in other jurisdictions have considered this problem (occasionally the subject of statutory provision) and have concluded that labor arbitration

---

[5] 1942 Federal Register, Sept. 11, 1942, vol 7 pt 5, p 7159. Double time directed for seventh day in 7-day work week.—REPORTER.

awards may be vacated or modified upon a showing of fraud, partiality, usurpation of power or other misconduct by the arbitrator, fraud by a party, or mistake. *Minkoff* v. *Scranton Frocks, Inc.* (SD NY), 181 F Supp 542, affirmed, per curiam (CCA 2), 279 F2d 115; *Gulf Oil Corp.* v. *Guidry,* 160 Tex 139 (327 SW2d 406); *Firestone Tire & Rubber Co.* v. *United Rubber Workers,* 168 Cal App2d 444 (335 P2d 990); *Burns* v. *Thomas Cook & Sons,* 317 Mass 398 (58 NE2d 150).

It is our conclusion that the Updegraff & McCoy statement of grounds for relief against arbitration awards corresponds closely with our own prior decisions relating to commercial arbitration[6] and properly sets forth the limited grounds upon which a labor arbitration award may be attacked.

Plaintiff's allegations must, therefore, be measured against these 6 grounds for attacking awards. It should be noted that the 3 grounds (fraud, bad faith, and arbitrary action) relied upon by the trial judge in determining the sufficiency of plaintiff's allegations are all, by fair inference, included in the list of 6 grounds set forth above, but they do not exhaust the list.

Among the allegations made by plaintiff in his amended declaration is one that a company witness was allowed to read into evidence summaries of unsworn statements made by unidentified people, thereby precluding plaintiff from confronting those from whom evidence was received, cross-examining them or otherwise meeting the evidentiary thrust of their testimonial statements. Plaintiff alleged that the umpire spoke privately to a number of defendant company's employees selected therefor by a prearranged plan between the umpire and the company

6 *Port Huron & Northwestern R. Co.* v. *Callanan, supra*; *Brush* v. *Fisher, supra*; *Stowe* v. *Mutual Home Builders Corp.,* 252 Mich 492; and *Corder* v. *Michigan Mutual Hail Ins. Co.,* 279 Mich 697, 701.

and that he refused to interview witnesses in plaintiff's behalf whose names were given to him, and failed to interview the person (plaintiff's "then wife") whose complaint caused his arrest and firing and who subsequently recanted her original story. Plaintiff also alleged that the umpire had stated the matter was a "clear cut case" before taking any testimony and that he told others that although the plaintiff's guilt of the charge was not satisfactorily proved, plaintiff's character was so bad that he probably was guilty. Other allegations were included in the amended declaration, but the foregoing is sufficient to indicate the substance and nature of the plaintiff's allegations.

The trial judge found these allegations insufficient to charge fraud, bad faith, or arbitrary action. We conclude that some of plaintiff's allegations are sufficient to charge fraud on the part of the arbitrator. But even if there were doubt about that, and we harbor none, those allegations certainly are legally sufficient to charge gross unfairness in the conduct of the proceeding preventing the plaintiff from having a fair hearing, another of the recognized grounds upon which an award may be attacked. *Giannopulos* v. *Pappas,* 80 Utah 442 (15 P2d 353); *Gervant* v. *New England Fire Ins. Co.,* 306 NY 393 (118 NE2d 574); and see *Acme Lumber Co.* v. *Ruby,* 237 Mich 314.

We do not regard gross unfairness as a ground for vacating an arbitration award so broad that judicial formality in the conduct of hearings, technical limitations upon the admission of evidence, or other procedures recognized as essential in judicial proceedings are required in arbitration hearings. Nor do we suggest that it is broad enough to permit judicial review of discretionary rulings of the arbitrator. What it does mean, in the context of this

case, is that where a hearing is held pursuant to a specific contractual authorization to:

"hold a hearing and examine the witnesses of each party, and each party shall have the right to cross-examine all witnesses produced and to make a record of all such proceedings."[7]

each party must be given a meaningful right to cross-examine witnesses and this cannot be done where summaries of unsworn statements made by unidentified people are allowed to be read into evidence; nor can it be done where, by prearranged plan between the company and the arbitrator, the arbitrator speaks privately to selected employees.

We do not intend to suggest by the foregoing that the parties to a collective bargaining agreement which provides for arbitration of labor disputes may not specify procedures short of the testimonial hearing provided for here. Indeed, this very contract authorized the umpire to "make such investigation as he may deem proper", but it also required that if he held a hearing and examined witnesses, each party should be afforded an opportunity for cross-examination and for the making of a record. Had the contractual authorization to "make such investigation as he may deem proper" specified the investigative procedures to be followed, perhaps what was here done might well be said to be within the competence of the contracting parties to provide. The point is that gross unfairness, like fraud, bad faith, and arbitrary action, must be judged by what the parties reasonably intended to allow by their agreement. Thus, it is conceivable that such an agreement might specifically authorize the arbitrator to interview employees privately and to do other things which, in the absence of specific agreement

---

[7] From article 7, § 20, of collective bargaining agreement.—RE-PORTER.

therefor, we would regard as grossly unfair. The language of this collective bargaining agreement cannot be read to mean that the conduct alleged in plaintiff's amended bill of complaint was authorized even in the absence of a hearing.

The order of dismissal should be reversed and the cause should be remanded for further proceedings in conformance herewith. Costs to plaintiff.

DETHMERS, C. J., and KAVANAGH, J., concurred with SOURIS, J.

KELLY, J. The agreement between the union and the company binds plaintiff and in the clearest possible language establishes a mutual agreement to settle disputes by arbitration and to foreclose appeal to the courts, as is evidenced by article 7, § 24, providing:

"There shall be no appeal from an umpire's decision. It shall be final and binding on the union, its members, the employee or employees involved and the company. The union will discourage any attempt of its members and will not encourage or cooperate with any of its members in any appeal to any court or labor board from a decision of the umpire, nor will the union or its members by any other means attempt to bring about the settlement of any claim or issue on which the umpire is empowered to rule."

Further proof of the parties' agreement to make the arbitrator's decision final is disclosed by the right given to both parties to terminate the hearing at any time previous to the arbitrator's final decision. Article 7, § 26, states:

"(a) The impartial umpire shall be a person jointly selected by the parties and shall continue to serve only so long as he continues to be acceptable to both parties."

And section 27 provides:

"(a) If at any time either party desires to terminate the service of the umpire, it shall give notice in writing to that effect, specifying the date of termination, and sending one copy to the umpire and one copy to the other party.

"(b) The party terminating the umpire's services shall specify in its notice whether or not it is agreeable to have said umpire render decisions in all cases pending before him up to the date of said termination, and if it determines that the umpire may decide such pending cases, the umpire shall render decisions thereon not later than 30 days from the date of said notice.

"(c) If the party terminating the services of the umpire elects not to have the cases pending before him decided by that umpire, he shall render no further decisions subsequent to the time fixed in the notice, and all cases then pending before him shall be referred to his successor or to any other person the parties may agree upon."

Under the agreement the arbitrator was the sole determiner as to how he would arrive at a decision, as evidenced by section 20 of article 7 of the agreement:

"The umpire may make such investigation as he may deem proper, and may, at his option, hold a hearing and examine the witnesses of each party, and each party shall have the right to cross examine all witnesses produced and to make a record of all such proceedings."

The plaintiff in the proceedings before the arbitrator was represented by his duly appointed union representative. There is no merit to plaintiff's complaint in his declaration that he was not represented by counsel, because nowhere in the agreement is there any requirement made or permission given to plaintiff to be represented by counsel.

From the pleadings submitted only 1 conclusion can be drawn, namely: That neither plaintiff nor his union representative at any time during the hearing complained in regard to the arbitrator's actions or his impartiality or fairness. No complaint is made in this appeal by the union or their representative of plaintiff at the hearing, and they are not parties to this action.

There is no express allegation in the declaration that the umpire's fraud, bad faith, and arbitrary action were discovered after the umpire's decision, unless the following general statement in the declaration should be so considered:

"That the umpire has on several occasions stated to various people that while the facts as to the actual charge made against the plaintiff were in confusion and unsatisfactory and that they were insufficient to show his guilt, his character was so bad, as learned by the umpire from the independent investigation made by him, that probably the plaintiff was guilty and that in any event the company should not be required to put this man back to work, thus again showing that the actions of the umpire constituted fraud and prejudice against the plaintiff."

Plaintiff, seeking the relief of our Court, claims that the requirement of due process is applicable to the umpire's proceedings. This claim is without merit as constitutional limitations, such as due process, are applicable only to governmental acts and do not apply to relationships such as are involved in this appeal.

October 2, 1953, the umpire held the discharge warranted. Four and one-half years lapsed before plaintiff filed his declaration (April 11, 1958) challenging the arbitrator's award.

As the trial court considered defendants' motion to dismiss he was confronted with the following:

(1) The agreement binding plaintiff stated that

without exception the findings of the arbitrator should be final;

(2) That plaintiff had unrestricted right to stop the arbitration at any time prior to final decision and to demand decision by a new arbitrator;

(3) That at no time did plaintiff or his union representative request the removal of the arbitrator;

(4) That over 4–1/2 years elapsed before this proceeding questioning the fairness and impartiality of the arbitrator was instituted;

(5) That our Court is most reluctant to pass judgment upon arbitrators' decisions.

I could develop number 5 above, namely: "That our Court is most reluctant to pass judgment upon arbitrators' decisions," by citing many decisions of this and other courts. I deem it sufficient to quote from Justice SOURIS' opinion as follows:

"An arbitration award, either at common law or as provided for by statute (CL 1948, § 645.1 *et seq.* [Stat Ann § 27.2483 *et seq.*]), bars recourse to the courts for judicial determination of the dispute submitted to arbitration so long as the presumptively valid award is permitted to stand.    *    *    *

"Even in cases involving commercial arbitration awards, we have indulged every presumption in favor of their fairness and imposed a heavy burden of proof upon the parties seeking to set them aside by requiring proofs that are clear and strong. *Brush* v. *Fisher,* 70 Mich 469, 473 (41 Am St Rep 510). *    *    *

"In short, arbitration awards are regarded as final and binding upon the parties as the judgment of a court."

This writer is of the opinion that an agreement explicitly providing for finality and protecting both parties by allowing dismissal of the arbitrator at any time previous to final decision should foreclose any appeal to our courts unless the declaration sets

forth "clear and strong" allegations of fraud discovered subsequent to the hearing. If companies and unions agree that such a procedure is the proper way to meet the complexities of industrial life, I see no reason why our courts should not approve such a procedure. The declaration in this appeal fails completely to meet this test.

If a trial should be ordered we would not test the proofs with the ordinary test of preponderance of evidence, but would require proofs that would be "clear and strong" because we indulge every presumption in favor of the fairness of the arbitrator.

Testing the adequacy of this type of declaration we should demand allegations that are definite and more "clear and strong" than we demand on an ordinary declaration.

The trial court properly dismissed the declaration without invoking principles I have just above set forth, using the ordinary tests of a declaration.

The record discloses the patience of the trial court and the fact that after argument the court filed (April 22, 1959) an extensive opinion (10 printed pages of the appendix), concluding same as follows:

"This court is desirous of giving the plaintiff his day in court if he is entitled to it and has pointed out herein what is necessary. While no request was made for the right to amend, the court on its own motion will give plaintiff 15 days from the date of this opinion in which to file an amended declaration. Certainly no cause of action is set forth in the present declaration."

The opinion granting the motion to dismiss gave the following reasons therefor:

(1) There is no question but what arbitrators are not and should not be bound by technical rules of evidence, and their findings will not be set aside for error either in law or in fact. The fact that hearsay

testimony or other incompetent testimony is admitted will not be considered. Error of judgment upon the part of the arbitrator will not be passed upon by the court, and an award will not be vacated even in a court of equity except for misconduct and misbehavior amounting to a wrongful or corrupt determination. *Burchell* v. *Marsh*, 58 US 344, 349 (15 L ed 96) ; *A. O. Anderson Trading Co., Ltd.,* v. *Brimberg,* 119 Misc 784 (197 NYS 289) ; *Vaughn* v. *Graham,* 11 Mo 575; *Cortez* v. *Ford Motor Co.,* 349 Mich 108, and cases cited therein; *Grant* v. *Atlas Powder Co.* (CCA 6), 241 F2d 715.

(2) Plaintiff alleged in his amended declaration that the decision of the arbitrator "was unsupported by any evidence whatsoever, rather being based upon hearsay and prejudicial testimony secured by the aforementioned umpire by his own investigation, which testimony was never disclosed to the plaintiff for his affirmance, denial or rebuttal  *  *  *  all of which statements were never shown or presented in any way to the plaintiff for his comments, corroboration or rebuttal and to this date plaintiff is without information as to what facts were learned by the umpire and what facts he based his decision on," and the lower court concluded from this statement that:

"No facts are set forth; no facts can be set forth with reference to the information that the umpire received because plaintiff was definitely precluded and foreclosed himself from any knowledge of facts by his own allegations, oft-repeated, as hereinbefore set forth. Certainly it cannot be contended, in view of the fact that this plaintiff had no knowledge whatsoever of what was learned by the umpire in his investigation, that any of these things set forth are facts, because he says himself he didn't know anything about the witnesses or what they said. It necessarily follows that again we are confronted with nothing but conclusions of the pleader."

(3) There is no claim made either in the original or amended declaration, that the retirement board, which consists of UAW members as well as company representatives, took any wrongful action with reference to the plaintiff other than to erroneously rely upon the action of the company in firing plaintiff.

The court concluded his opinion granting the motion to dismiss by stating:

"This court gave the plaintiff this opportunity of its own motion, and having carefully and thoroughly considered the amended pleading is unable to find therein any facts pertaining to bad faith, arbitrary action, or fraud upon the part of this umpire. This looks to me like an afterthought, conceived several years following the decision. The contract, governing all the parties, including the plaintiff, is explicit, and this court should take no further action in the matter.

"The claim that he is not a proper party would be absolutely true in the absence of allegations within the *Cortez Case,* showing bad faith, arbitrary action, or fraud upon the part of the umpire. If such facts had been pleaded, it would be my opinion that he as an individual could bring his lawsuit as plaintiff.

"The motion is granted, with costs to the defendants."

I agree with the trial court that the pleadings were based on conclusions and that there is a complete absence of facts pertaining to bad faith, arbitrary action, or fraud upon the part of the umpire.

Concluding this dissent from Justice SOURIS' opinion, I quote with approval the following from the brief of the Ford-UAW Retirement Plan Board of Administration:

"While all factual allegations of a plaintiff's declaration must be fairly construed and accepted as true on a motion to dismiss, it is equally true that plaintiff's allegations cannot be extended beyond

their fair meaning by legal conclusions set forth in plaintiff's declaration, briefs, and arguments. *Prawdzik* v. *Heidema Brothers, Inc.*, 352 Mich 102, 110. Stripped to its essentials, plaintiff here simply complains that parts of the arbitrator's investigation and hearing were conducted without some of the formalities plaintiff would have wished to have had present. Unfortunately for plaintiff's position, the arbitrator's investigation and hearing was conducted within the strict confines of the contract between the company and the union, and it is axiomatic that plaintiff here can never have greater rights than those created by this contract. At best, plaintiff's allegations amount to arguments for different contract provisions which can have no effect on plaintiff's status.

"In a general sense, we wish to direct the Court's attention to the underlying reasons for the very well established judicial reluctance to second guess or, under ordinary circumstances, review an arbitrator's award. Collective bargaining contracts with arbitration provisions cover well in excess of 12,000,000 Americans. The day-to-day problems of administering this vast number of contracts with such great coverage lead to an infinite variety of particular situations where the parties, and quite frequently, the arbitrators as a last resort, must make decisions affecting various important rights and prerogatives of numerous employees. These settlements by the parties, or decisions by arbitrators and umpires, are certainly not always perfect any more than judicial decisions are always perfect. However, the numbers, variety, and complexity of these everyday disputes are such that the final disposition within the collective bargaining contract framework must, if collective bargaining is to be allowed to do a practical day-to-day job, be accorded a very high degree of finality. The wisdom of already prevailing judicial restraint in this area has been very recently emphasized by the underlying rationale of the United States Supreme Court in *United Steelworkers* v.

*American Manufacturing Co.* and analogous decisions,* all decided on June 20, 1960, and quoted in appellee's principal brief herein.   *   *   *

"As is true in all judicial and quasi-judicial proceedings, it is certainly better that, in the eyes of a judge or appellate court, an occasional mistake of judgment might be made by an arbitrator than that his award be treated as an interim stage in the dispositive procedures with the consequent uncertainty that such a course would inevitably result in.   In the last analysis, any but the most narrow judicial review under extreme circumstances would not only eventually destroy in large part the collective bargaining framework on which modern American industry is largely built, but would have the certainly undesirable by-product effect of so seriously overburdening courts with tremendous numbers of new matters that the courts would not physically have the time to do justice to their regular dockets.

"Though this Court does not generally favor disposition of litigation on motion to dismiss, the foregoing considerations would appear to make such disposition particularly appropriate in a case of this type where the plaintiff, as here, fails to present *specific factual* allegations, which could, at least conceivably, bring the arbitration award within the very limited area in which a court might modify or amend such award.   To require cases such as this to proceed to a full trial on the merits would endlessly delay finality and otherwise very substantially vitiate the arbitration process."

I find that the court did not err in granting the motion to dismiss and, therefore, affirm, with costs to appellees.

---

* *United Steelworkers of America* v. *American Manufacturing Co.,* 363 US 564 (80 S Ct 1343, 1363, 4 L ed2d 1403, 1432).

*United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 US 574 (80 S Ct 1347, 4 L ed2d 1409).

*United Steel Workers of America* v. *Enterprise Wheel & Car Corp.,* 363 US 593 (80 S Ct 1358, 4 L ed2d 1424).

Note additional opinion at 363 US 569 (80 S Ct 1363, 4 L ed2d 1432) as it relates to the individual cases.—REPORTER.

CARR, J., concurred with KELLY, J.

EDWARDS, J. (*concurring*). I concur with the result reached by Mr. Justice KELLY in this case. I agree that the amended declaration did not state facts which (if assumed to be true) would warrant setting aside the arbitration decision on grounds of fraud. The pleadings relied on in this regard are either conclusionary or ambiguous.

Likewise, I would adhere to the standards previously declared in case law as to the limited grounds upon which we open the door of the courts to rehearing industrial disputes which the parties have agreed to submit for "final" decision to arbitration. See *Cortez* v. *Ford Motor Co.,* 349 Mich 108.

The real question in this case, however, is whether or not (assuming the well-pleaded facts of plaintiff's declaration are true) plaintiff was arbitrarily denied a fair hearing as defined in the contract which established the arbitration machinery. The contract clause in question reads:

"Sec. 20. The umpire may make such investigation as he may deem proper, and may, at his option, hold a hearing and examine the witnesses of each party, and each party shall have the right to cross-examine all witnesses produced and to make a record of all such proceedings."

Plaintiff reads this as guaranteeing all the requisites of a judicial hearing if the arbitrator holds any hearing at all. The language quoted does not appear to me to support this interpretation. It contains a very broad grant of discretion to the umpire. He read this discretion (we think permissibly) as warranting conduct of off-the-record investigations and hearing hearsay evidence. Both of these procedures would be an anathema to the judicial process. But what we deal with here is not the judicial process but

a private contract substitute therefor. Whether such a contractual provision as we have quoted is necessary or wise is not for us to decide. The parties agreed to it and they had a right to do so.

The essentials of a fair hearing in arbitration proceedings are spelled out thus by one of the leading authorities in the field of labor arbitration:

"A fair hearing includes adequate notice of the time and place, a reasonable time for preparation, and an opportunity to present evidence and argument." 30 Rocky Mountain L Rev 247, 249.

To these, this contract added a specific reference to a right of cross-examination.

We do not find allegations in this pleading which claim that these minimum standards were violated. Specifically, we do not find any allegation that the umpire refused to hear any witness which plaintiff produced at the hearing or declined to allow plaintiff or his representative to cross-examine any witness produced by the company.

BLACK, J., concurred with EDWARDS, J.

OTIS M. SMITH, J., took no part in the decision of this case.