KHALIFA v HENRY FORD HOSPITAL

Docket No. 84582. Submitted March 20, 1986, at Detroit. Decided December 2, 1986. Leave to appeal applied for.

Ahmed A. Khalifa filed an action in the Wayne Circuit Court against Henry Ford Hospital and Pedro Cortes, M.D., after the hospital terminated his employment on the basis of insubordination. Cortes had been plaintiff's immediate supervisor. Plaintiff alleged a breach of employment contract, intentional infliction of emotional distress, and defamation of character arising from defendants' actions leading to his discharge. Defendants moved for summary disposition of the breach of employment contract claim, arguing (1) the claim is barred by the disposition of the hospital's Employee Grievance Council, (2) plaintiff had failed to state a claim upon which relief could be granted, and (3) plaintiff had not raised a genuine issue of material fact and that defendants were entitled to judgment as a matter of law. Additionally, defendants moved for summary disposition of the claims for intentional infliction of emotional distress and defamation. The trial court, Charles S. Farmer, J., granted the motion for summary disposition of the defamation claim, but denied the motions relative to the breach of contract and intentional infliction of emotional distress claims. Defendants appealed by leave granted.

The Court of Appeals *held:*

1. Discharge only for cause was one of the conditions of plaintiff's employment established by statements in the policy manuals and accepted by plaintiff when he commenced employment. Insubordination was one of twelve specific instances stated by the manuals to constitute cause for discharge.

2. Judicial review of an employer's termination of employ-

REFERENCES

Am Jur 2d, Damages § 195.

Am Jur 2d, Labor and Labor Relations §§ 9, 1895, 1896.

Damages recoverable for wrongful discharge of at-will employee. 44 ALR4th 1131.

Right to discharge allegedly "at-will" employee as affected by employer's promulgation of employment policies as to discharge. 33 ALR4th 120.

See also the annotations in the Index to Annotations under Appeal and Error.

ment which is terminable only for cause is limited where the employer provides a procedure for resolution of disputes over whether cause to discharge existed. In this case, plaintiff availed himself of the full extent of the hospital's grievance procedures to contest defendants' actions both before and after his discharge. He had an opportunity to air his grievances before an impartial body of fellow employees. The trial court therefore, erred in denying summary disposition of plaintiff's breach of employment contract claim.

3. Damages for intentional infliction of emotional distress are not recoverable in an action for breach of employment contract. The trial court therefore erred in denying summary disposition of plaintiff's intentional infliction of emotional distress claim.

Reversed and remanded for summary disposition of the breach of employment contract and intentional infliction of emotional distress claims.

R. M. MAHER, P.J., dissented in part. He would hold that an employer's promise of discharge only for cause may be rendered illusory where procedural and substantive protections are lacking at the alternative dispute resolution proceedings provided by the employer. In this case, he would hold that the procedures employed by the hospital were plainly inadequate for a reliable determination of cause. He would affirm the trial court's denial of the motion for summary disposition of the breach of employment contract claim.

### OPINION OF THE COURT

1. LABOR RELATIONS — EMPLOYMENT CONTRACTS — TERMS OF EMPLOY-
    MENT — DISCHARGE FROM EMPLOYMENT.

A contract of employment for an indefinite term is terminable at will by either party; however, if an employer by agreement or by written or oral policy statements covenants not to discharge an employee except for cause, an enforceable contract to discharge only for cause ensues.

2. LABOR RELATIONS — DISCHARGE FROM EMPLOYMENT — APPEAL.

An employer, in conferring upon an employee the right to be discharged only for cause, may also provide a procedure for resolution of disputes over whether cause to discharge existed; the decision reached under that procedure might preclude submission to a jury of a wrongful discharge claim and be subject only to limited judicial review, but only where the dispute is resolved by an impartial arbiter.

3. CONTRACTS — EMPLOYMENT CONTRACTS — BREACH OF CONTRACT —
DAMAGES — MENTAL DISTRESS.

Damages for mental distress are not recoverable in a breach of
employment contract action.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY R. M. MAHER, P.J.

4. LABOR RELATIONS — DISCHARGE FROM EMPLOYMENT — APPEAL.

*An employer can avoid the perils of a jury review of its determination of whether an employee was terminated for "cause" by providing for alternative methods of dispute resolution, but only if the determination of cause made in such alternative proceedings incorporates procedural and substantive protections to ensure impartiality.*

*Gottlieb & Goren, P.C.* (by *Charles Gottlieb*), for plaintiff.

*Keller, Thoma, Schwarze, Schwarze, Du Bay & Katz, P.C.* (by *Terrence J. Miglio* and *Donna R. Nuyen*), for defendants.

Before: R. M. MAHER, P.J., and CYNAR and T. GILLESPIE,* JJ.

T. GILLESPIE, J. Defendants appeal, by leave granted, from two parts of an order of Wayne Circuit Judge Charles S. Farmer, dated April 18, 1985.

The suit brought by the plaintiff alleges as one count a breach of employment contract. The defendants moved for summary disposition pursuant to MCR 2.116(C)(7), alleging the claim to have been barred by reason of a prior judgment.

The basis for that portion of the motion was that plaintiff had availed himself of the full grievance procedure through the hospital's grievance council and judgment was rendered against him.

The second portion of the motion was that plain-

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff had failed to state a claim upon which relief could be granted. MCR 2.116(C)(8).

The third ground, under MCR 2.116(C)(10), was that plaintiff had not raised a genuine issue of material fact.

Judge Farmer denied this motion, subject to a right to refile if the Michigan Supreme Court decided favorably to defendants' position in the case of *Fulghum v United Parcel Service, Inc,* 130 Mich App 375; 343 NW2d 559 (1983). *Fulghum* was affirmed in 424 Mich 89; 378 NW2d 472 (1985).

The defendants' second motion for summary disposition was as to a claim of intentional infliction of emotional distress during plaintiff's employment. This motion was likewise denied.

The defendants' third motion was for summary disposition of plaintiff's claim for defamation. This motion was granted. Judge Farmer cited as his basis therefor MCL 600.5805(7); MSA 27A.5805(7), now MCL 600.5805(8); MSA 27A.5805(8), the three-year statute of limitation.

We reverse as to plaintiff's claim of breach of employment contract and intentional infliction of emotional distress and affirm as to summary disposition of the defamation claim.

FACTS

Plaintiff, Ahmed A. Khalifa, was born in Egypt. He received Bachelors and Masters Degree in biochemistry in that country. He received a Ph.D. in physiology at Wayne State University.

He was hired in August, 1979, by Henry Ford Hospital, which is a private, nonprofit health care facility. He was hired as a research coordinator in the nephrology department research laboratory. His immediate supervisor was defendant Pedro Cortes, M.D.

Khalifa was assigned to direct, supervise and schedule research activities on a new diabetes research project.

By February, 1981, personal problems developed between the plaintiff and Dr. Cortes. Dr. Cortes requested plaintiff to meet with him to discuss assignment progress. Khalifa refused to go because he alleged that the last time he was so summoned he was "harassed and yelled at." The failure to meet with Dr. Cortes resulted in a disciplinary report.

On March 15, 1981, Khalifa was given a written warning because of poor progress in attainment of work objectives. This was met with a strong rebuttal that: (a) he was denied necessary materials for his work; (b) he was locked out of his laboratory to prevent him from proceeding with his work; (c) he was sabotaged by Dr. Cortes, who not only denied him materials, but assigned him to routine testing work; (d) he was assigned to dangerous work involving carcinogenic materials without recommended safety equipment; (e) Dr. Cortes falsely accused him of being affected with an undefined physical and mental condition; and (f) the purpose of his hire was altered to create the impression he was not performing his work and to eliminate competition with a project run by Dr. Cortes.

Khalifa's complaints about toxicity and ventilation in the laboratory were investigated and, while it was determined that the lab was safe, he was told that he should not work with acetonitrile, a chemical needed for the research.

Khalifa was then transferred to a laboratory in the basement of the nephrology laboratory. He refused to report. His rebuttal was that he was being placed under the supervision of a lab technician with a high school education knowing that he

would not accept such professional humiliation and that Cortes would be in a position to fire him.

After being given verbal and written communications to report to the new assignment, Khalifa was given a three-day suspension when he refused.

On April 24, 1981, Khalifa's employment was terminated for insubordination because upon return from his suspension he still refused to work at the new assignment, despite being warned that refusal would result in termination for insubordination.

At the time of plaintiff's dismissal, the hospital had in effect personnel policies governing the conduct, work performance and discipline of its employees. These policies and procedures are contained in the hospital's employee handbook which was distributed to all employees. The hospital also had a four-step grievance procedure for resolving the complaints of employees who had been disciplined. This procedure was set forth both in the employee handbook and the HFH (Henry Ford Hospital) Grievance Guide which was also distributed to all employees.

Under the grievance procedure, the grievance is first reviewed by the employee's supervisor, then the employee's department head, and then a representative of the hospital's personnel department. The grievance procedure culminates in a Step Four hearing before the Henry Ford Hospital Employee Grievance Council, which is comprised solely of nonsupervisory employees. No person who has made the initial decision to discipline or terminate the employee participates in the decision-making process of the council.

The Employee Grievance Council has the authority to uphold, overturn or modify the disciplinary action taken by the hospital. It also has the authority to reinstate discharged employees and to

award full or partial back pay. Employees campaign for seats on the Employee Grievance Council and are elected by employees such as plaintiff, for staggered two-year terms. The policies governing the grievance procedure provide that the decision of the Employee Grievance Council is final and binding.

On April 22, 1981, plaintiff filed a grievance concerning the written warnings he received. The grievance covered myriad complaints against Dr. Cortes. Plaintiff was provided with a written, self-explanatory response to the grievance by Dr. Cortes.

Plaintiff appealed the grievance to Step Three of the grievance procedure where Gerard Guinane, the representative from the personnel office, upheld the written warnings with the recommendation that the substance of both warnings be consolidated into one warning. He also upheld the three-day suspension.

Plaintiff, after being dismissed, filed an additional grievance. Dr. Cortes again responded in writing. After investigating this grievance, Mr. Guinane also upheld the termination.

Plaintiff appealed the decisions relative to his grievance to the Employee Grievance Council. A hearing before the council was held on July 14, 1981, at which time plaintiff explained his position and offered evidence on his behalf. Dr. Cortes also appeared and testified. The nine-employee member grievance council voted 7 to 2 in the hospital's favor, finding that "[t]he hospital was justified in issuing three written warnings which consequently resulted in his termination."

On November 16, 1982, plaintiff filed a complaint in Wayne Circuit Court. On March 6, 1985, the hospital and Dr. Cortes filed a motion for summary disposition on plaintiff's breach of con-

tract claim on the basis that plaintiff's sole and exclusive remedy from any breach of an employment contract was an appeal to and decision by the hospital's grievance council. The hospital and Dr. Cortes also sought summary disposition on plaintiff's claim for intentional infliction of emotional distress since that claim was barred by the decision of the grievance council, the actions of the hospital and Dr. Cortes were allegedly privileged, and plaintiff could not as a matter of law establish a prima facie case of intentional infliction of emotional distress.

The only grounds asserted by plaintiff in opposition to the motion were that: (a) the motion on the breach of contract claim should be held in abeyance pending the outcome of the decision in *Fulghum v United Parcel Service, Inc, supra* [leave had been granted September 26, 1984, 419 Mich 934 (1984)]; (b) the hospital's grievance procedure did not provide him with procedural due process; (c) the hospital's grievance procedure was not impartial; and (d) the affidavit of plaintiff raised questions of fact, thereby precluding summary disposition.

On April 18, 1985, the trial court denied the motion for summary disposition with respect to plaintiff's claims of breach of contract and intentional infliction of emotional distress. It did, however, grant the motion with regard to plaintiff's claim of defamation. As previously indicated, it is from the denials that defendants appeal.

### ANALYSIS

The first question is whether the court should have granted defendants' motion for summary disposition under MCR 2.116(C)(7).

MCR 2.116(C)(7) provides that summary disposi-

tion may be granted for a number of reasons. The
one urged in this case is prior judgment by reason
of plaintiff's having exercised full rights under the
grievance procedure set up by the hospital in its
manuals.

It is well settled as a general proposition that
oral contracts of employment for an indefinite
term are terminable at will by either party. The
law has not changed in this regard. In *Valentine v
General American Credit, Inc,* 420 Mich 256; 362
NW2d 628 (1984), *Clifford v Cactus Drilling Corp,*
419 Mich 356; 353 NW2d 469 (1984), and *Suchodol-
ski v Michigan Consolidated Gas Co,* 412 Mich 692,
694-695; 316 NW2d 710 (1982), the Michigan Su-
preme Court reaffirmed the viability of the em-
ployment-at-will doctrine.

However, in 1980 the Supreme Court of Michi-
gan created an exception in that if an employer by
agreement or policy statements, oral or written,
covenants not to discharge an employee except for
cause, an enforceable contract ensues. The case
establishing such rule was *Toussaint v Blue Cross
& Blue Shield of Michigan,* 408 Mich 579, 613; 292
NW2d 880 (1980). The conditions formulating the
contract were enunciated in the following terms:

> While an employer need not establish personnel
> policies or practices, where an employer chooses to
> establish such policies and practices and makes
> them known to its employees, the employment
> relationship is presumably enhanced. The em-
> ployer secures an orderly, cooperative and loyal
> work force, and the employee the peace of mind
> associated with job security and the conviction
> that he will be treated fairly. No pre-employment
> negotiations need take place and the parties'
> minds need not meet on the subject; nor does it
> matter that the employee knows nothing of the
> particulars of the employer's policies and practices

or that the employer may change them unilaterally. It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation "instinct with an obligation."

The *Toussaint* decision applies directly to the policies of Henry Ford Hospital. Each employee, including plaintiff, is provided with a policy manual upon entry into employment. At page 23 of the manual are listed "Types of Separation," of which there are six. Under "discharge" the policy is "Hospital termination *for cause.*" (Underscoring from the manual.) On page 22 of the manual the hospital lists twelve specific instances defined as cause. One of those, applicable here, is "insubordination or negligence in performance of duties."

*Toussaint* holds that the contract established is a mutual one. If the employee adheres to company policy, he may expect job security. Under such contract it is expected that if an employee is discharged and he contests the fact that there was a deviation from company policy, an issue is created triable by jury in the courts.

At page 624 of *Toussaint,* the Court stated:

[T]he employer can avoid the perils of jury assessment by providing for an alternative method of dispute resolution. A written agreement for a definite or indefinite term to discharge only for cause could, for example, provide for binding arbitration on the issues of cause and damages.

Our understanding of the principle to be derived from the above conclusion is the same as the

understanding of another panel of this Court in
*Vander Toorn v Grand Rapids,* 132 Mich App 590;
348 NW2d 697 (1984), wherein the panel at page
598 stated:

> The principle we derive from these statements
> by the Court in *Toussaint, supra,* is that an em-
> ployer, in conferring upon its employee the right
> to be discharged only for cause, might also provide
> a procedure for resolution of disputes over
> whether cause to discharge existed, and the deci-
> sion reached under that procedure might preclude
> submission to a jury of a wrongful discharge claim
> and be subject only to limited judicial review, but
> only where the dispute is resolved by some impar-
> tial arbiter.

The hospital in this case provided for an alterna-
tive method of dispute resolution, which was made
a provision of the contract of employment by
furnishing to the employee an employee's manual
and a manual setting forth in detail the grievance
procedures which would apply upon employment.
At this point the employee had the option not to
be employed under the conditions set forth. Upon
acceptance of such conditions by the employee a
contract was established.

That employment manuals are considered as
setting forth conditions of the employment con-
tract has been recognized by this Court. *Damrow v
Thumb Cooperative Terminal, Inc,* 126 Mich App
354; 337 NW2d 338 (1983); *Longley v Blue Cross &
Blue Shield,* 136 Mich App 336; 356 NW2d 20
(1984); *Obey v McFadden Corp,* 138 Mich App 767;
360 NW2d 292 (1984).

We quote from the Employees Manual:

> The Grievance Council provides those HFHers
> having grievances with a formal method by which

grievances can be impartially settled. The Council consists of seven non-supervisory HFHers, elected by their fellow employees, who have at least two years full-time service at HFH. Membership in this unique body is for a two year period.

The Council has the authority to revoke written warnings and to reverse Hospital decisions on suspensions and/or discharge of HFHers. The Council may not change or establish Hospital policies.

All permanent full-time and part-time HFHers who have completed the 90-day probationary period may voice their dissatisfaction through the grievance procedure when they perceive that they have been treated unjustly and that their disputes cannot be resolved to their satisfaction through normal channels. Upon initiating a grievance, it is the HFHer's responsibility to pursue it through each of the following steps within the time limits specified. Failure to do so will result in forfeiture of the right to pursue the grievance through the grievance procedure.

1. Place the grievance in writing on a form provided in the Personnel Department. Complete the form, keep a copy and present the Grievance Form to your supervisor for action. You must present this grievance to your supervisor within five (5) working days of the grievance or you will lose your right to initiate a grievance.

2. Present your written grievance to your Department Head. Your Department Head has five (5) working days in which to settle your grievance. If you are not satisfied or you do not receive an answer within five (5) working days, you have the right to go to the next step in the Grievance Procedure.

3. Present your written grievance to the Director of Personnel, or his designee. If you are not satisfied with the answer or do not receive an answer within five (5) working days, you have the right to go to the next step in the Grievance Procedure.

4. Grievances that pertain to written warnings, suspension, or discharges will be heard by the

Employee Grievance Council whose decision on
such matters will be final. Council meetings will
be called by the Council Advisor.

HFHers are reminded not to contact any Griev-
ance Council member regarding a grievance but to
follow the above procedure. The Employee Griev-
ance Council is designed to make fair and just
decisions on grievances brought before the Council
and cannot do so if prior knowledge of the griev-
ance prejudices its decision.

No one will be reprimanded or made to suffer
undue harassment or punishment from any super-
visor, other employee, etc. as a result of initiating
a grievance.

Please keep in mind that it is your responsibility
to pursue each step of the grievance procedure.

The plaintiff admits awareness of the terms of
his contract of employment, having read the em-
ployment manual and grievance procedure and
accepted such conditions when employed. Further-
more, he utilized the grievance procedure set up
by the hospital to its full extent.

However, he argues that his hearing lacked due
process and was unfair.

The specifics of which he complains essentially
are that: (1) plaintiff was not allowed to be present
during the hearing before the grievance council;
(2) he was given no opportunity to rebut evidence
and argument; (3) no record was kept of the hear-
ing; (4) no cross-examination was allowed; (5) there
was no representation by counsel permitted; and
(6) the admission of Gerald Guinane to testify was
unacceptable as he was involved in the decision to
terminate plaintiff and was a professional on
grievance procedure. Further, Guinane testified for
forty-five minutes in comparison to fifteen minutes
on the part of the plaintiff.

Certainly some of the plaintiff's claims would be

valid in the context of a judicial proceeding. However, the Supreme Court in *Frazier v Ford Motor Co,* 364 Mich 648, 662; 112 NW2d 80 (1961), pointed out that in collective bargaining agreements "constitutional limitations, such as due process, are applicable only to governmental acts and do not apply to relationships as are involved in this appeal." In a concurring opinion, Justice Edwards at pages 669-670 points out that the arbitration contract in that case contained procedures which would be anathema to the judicial process and that all that is required in such a proceeding is a fair hearing, which he defines, quoting from Cox, Current Problems in the Law of Grievance Arbitration, 30 Rocky Mountain L Rev 247, 249 (1957), as " 'A fair hearing includes adequate notice of the time and place, a reasonable time for preparation, and an opportunity to present evidence and argument.' "

The plaintiff had an opportunity to air his grievances before an impartial body of elected fellow employees. Management had a like opportunity to present its case through the testimony of Dr. Cortes and Gerald Guinane. We are not impressed by plaintiff's argument that Guinane should not have been a witness nor the fact that Guinane spent more time before the panel than did the plaintiff. There is no complaint that plaintiff was not given time to present his position in full nor that he was refused the right to present other witnesses to support his position.

The important point is that Guinane did not participate in the decision-making process which was entirely made by the employee-elected grievance council.

The motion for summary disposition under MCR 2.116(C)(7) should have been granted as the plaintiff's claim was fully heard and decided according

to the contract procedures accepted upon employment.

Before leaving the subject of breach of contract, we would comment that the plaintiff relies on *Vander Toorn v Grand Rapids, supra,* as being on point. In that case the building maintenance supervisor of a nature center owned and operated by the City of Grand Rapids was denied reinstatement by a grievance committee. This action was upheld by the circuit court but reversed by a panel of this Court.

That case is readily distinguished in that the grievance committee in that case only had the power of recommendation with final decision residing in the employer. In this case the grievance council decision was final.

The second question is whether defendants' motion for summary disposition in connection with the claim for intentional infliction of emotional distress should have been granted.

Plaintiff's claim of intentional infliction of emotional distress is premised on his allegations that: (1) Dr. Cortes humiliated plaintiff by insults about his heritage and on one occasion Dr. Cortes was purported to have said he thought Arabs are barbarians and "you people are dumb and slow"; (2) Dr. Cortes threatened him with disciplinary reports so that he could not get another job; and (3) Dr. Cortes subjected him to professional humiliation by assigning him to the work which he refused and then discharged him.

It is now well settled that damages for intentional infliction of emotional distress are not recoverable in an action for breach of an employment contract. *Valentine, supra; Brewster v Martin Marietta Aluminum Sales, Inc,* 145 Mich App 641; 378 NW2d 558 (1985).

Nor has tort liability for emotional distress yet

been recognized by the Michigan Supreme Court. *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985).

The Court of Appeals has on one occasion allowed tort liability for emotional distress, but only for outrageous conduct far more brutal than the conduct alleged by the plaintiff. *Barnes v Double Seal Glass,* 129 Mich App 66; 341 NW2d 812 (1983). See *Fulghum v United Parcel Service, Inc,* 424 Mich 89, 97; 378 NW2d 472 (1985), also, *Daley v LaCroix,* 384 Mich 4; 179 NW2d 390 (1970), and *Chrum v Charles Heating & Cooling, Inc,* 121 Mich App 17; 327 NW2d 568 (1982).

Reversed and remanded for summary disposition to be entered both as to breach of contract and intentional infliction of emotional distress.

Affirmed as to summary disposition for defamation.

CYNAR, J., concurred.

R. M. MAHER, P.J. *(dissenting in part).* I agree that, under *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), an employer can avoid the perils of a jury review of its cause determination by providing for alternative methods of dispute resolution. I do not agree with the implicit holding of the majority opinion that any alternative method of dispute resolution will preclude a jury review of the cause determination.

The *Toussaint* Court explained the need for jury review of the employer's cause determination as follows:

A promise to terminate employment for cause only would be illusory if the employer were permitted to be the sole judge and final arbiter of the

propriety of the discharge. [*Toussaint, supra,* p 621.]

That point was treated as axiomatic by the Court and so stated without authority or further explanation. I believe and submit, however, that the reason the *Toussaint* Court found such a promise to be illusory is that it fails to incorporate even elementary procedural fairness in the determination of cause. The *Toussaint* Court thereby acknowledged that cause necessarily incorporates both substantive and procedural aspects.

Obviously, the most significant element of procedural fairness lacking in a final and binding determination of cause by the employer is impartiality. Since the grievance council members in this instance were elected "from the ranks," I am inclined to believe that they sufficed, at least initally, as impartial arbiters. However, I do not believe that impartiality is an immutable characteristic. Proceedings which do not incorporate other elements of procedural fairness may easily manipulate an otherwise impartial arbiter and grossly distort the outcome. Thus, unlike the majority, I believe that a promise of discharge for cause may be illusory even if applied by an apparently impartial council of arbiters.

Unlike the majority, I do not find *Frazier v Ford Motor Co,* 364 Mich 648; 112 NW2d 80 (1961), dispositive. The deference exercised by the *Frazier* Court toward the grievance procedure employed therein was derived not from judicial indifference, but from respect for the statutorily mandated collective bargaining procedure. Here there is no collective bargaining agreement. Moreover, even if the deferential standard for collective bargaining agreements is used, it is more accurately set forth in *Breish v Ring Screw Works,* 397 Mich 586; 248

NW2d 526 (1976). Under *Breish,* the procedure employed in final and binding arbitration must be "adequate to provide a fair and informed decision." *Breish, supra,* p 601.

As the majority concedes, the plaintiff in this instance was denied counsel and denied presence during the proceedings of the grievance council. The plaintiff had no right to cross-examination, no record was kept of the proceedings and the employee was given only a conclusory, one-sentence decision by the council. In addition, the employer appears to have violated its own procedures by allowing Gerald Guinane to testify.[1]

While I cannot say that any one of these would render the procedure defective, the combined effect was clearly inadequate to provide a fair and informed decision. This was not the "hearing" promised in the employee handbook, but an inquisition. The procedure employed may well have been manipulated by the employer to transform an impartial jury of the plaintiff's peers into a misled mob.

In sum, the employer was under no duty to do so, but nevertheless established a policy of discharge for "cause." Having done so, *Toussaint* requires that the employer adhere to that policy. A promise of discharge for cause which is not illusory implicitly embraces both procedural and substantive protections. Here the procedures employed by the employer were plainly inadequate for a reliable determination of cause. I do not, of

---

[1] Paragraph 2B of the Grievance Guide under "hearings" provides:

> No one except you, your Supervisor, your Department Head, the witnesses and the Grievance Council Advisor may appear before the Council.

The plaintiff alleges that Guinane was none of these, but instead the "decision maker at step 3." If so, the majority has essentially misrepresented the plaintiff's claim as merely one alleging that a disproportionate amount of time was spent with one witness.

course, hold that the employer thereby violated its policy. I do hold that these procedures cannot insulate the employer's determination from judicial review. I would therefore affirm the trial court's denial of summary disposition on the claim for breach of employment contract.