CIRNER v TRU-VALU CREDIT UNION

Docket No. 88848. Submitted June 2, 1987, at Grand Rapids. Decided June 10, 1988.

Bernadette and Joseph Cirner brought an action in the Muskegon Circuit Court against Tru-Valu Credit Union and Gertrude Young, its manager, alleging breach of an employment contract, age discrimination, intentional infliction of emotional distress, and damage to the couple's marital relationship. At trial, an expert in labor management relations was permitted to testify (1) that language in Tru-Valu's standard employee questionnaire created a just cause employment contract, (2) as to what just cause termination is, and (3) that he charged plaintiffs a less-than-normal fee because he felt that defendants had so mistreated Bernadette Cirner. The court, Michael E. Kobza, J., dismissed Young from the breach of employment count, directed a verdict against plaintiffs on the age discrimination claim and entered a judgment against defendants on a jury verdict as to the other claims. Defendants appealed and plaintiffs cross-appealed.

The Court of Appeals *held:*

1. The court erred in allowing the expert witness' testimony, since there was nothing so exceptional as to require an expert's opinion.

2. On remand, the court should grant a directed verdict on the intentional infliction of emotional distress claim. Damages for intentional infliction of emotional distress are not recoverable in an action for breach of an employment contract.

Reversed and remanded.

1. EVIDENCE — EXPERT TESTIMONY — RULES OF EVIDENCE.

Three criteria must be satisfied for testimony to be admitted as expert testimony: (1) there must be an expert; (2) there must be

REFERENCES

Am Jur 2d, Expert and Opinion Evidence §§ 16 *et seq.*

Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 33-35.

Damages recoverable for wrongful discharge of at-will employee. 44 ALR4th 1131.

Liability of employer, supervisor, or manager for intentionally or recklessly causing employer emotional distress. 52 ALR4th 853.

facts in evidence which require or are subject to examination and analysis by a competent expert; and (3) there must be knowledge in a particular area that belongs more to an expert than to a common man (MCR 702).

2. WITNESSES — EXPERT WITNESSES — OPINION TESTIMONY.
   The determination of the admissibility of expert testimony is within the discretion of the trial court and will vary according to the subject matter at issue and the particular facts of a case; the determination should be made on the basis whether the expert's testimony will assist the trier of fact in understanding the evidence or the factual issues; expert opinion need not be admitted where a common-sense inquiry reveals that an untrained layman would be qualified to determine intelligently the matter at issue without such opinion (MRE 702).

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — EMPLOYMENT CONTRACTS.
   Damages for intentional infliction of emotional distress are not recoverable in an action for breach of an employment contract.

*John Allen Johnson,* for plaintiffs.

*Harvey, Kruse, Westen & Milan, P.C.* (by *Thomas R. Bowen* and *Lisa T. Milton*), for defendants.

Before: BEASLEY, P.J., and MAHER and M. E. DODGE,* JJ.

PER CURIAM. Defendants, Tru-Valu Credit Union and Gertrude Young, and plaintiffs, Bernadette and Joseph Cirner, appeal from a May 7, 1985, judgment of the Muskegon Circuit Court. The judgment followed a jury verdict and awarded plaintiffs a total of $75,000 in damages for breach of an employment contract and intentional infliction of emotional distress. Defendants appeal from the trial court's orders denying their motions for directed verdicts against plaintiffs' claims of breach of contract and intentional infliction of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

emotional distress. Defendants also contend that the trial court erred in admitting certain expert testimony and in instructing the jury that defendants bore the burden of proving that they had fired Bernadette Cirner for "just cause." Plaintiffs cross-appeal from the trial court's order denying their motion to reconsider its directed verdict against Bernadette Cirner's age discrimination claim.

Bernadette Cirner (hereafter plaintiff or Cirner) was an employee of Tru-Valu from April, 1977, until she was fired in July, 1983. In December, 1983, the Cirners filed a three-count complaint alleging that defendants (I) breached Cirner's just cause employment contract with Tru-Valu, (II) discriminated against Cirner due to her age, and (III) intentionally inflicted emotional distress upon Cirner. In Count III, Joseph Cirner claimed damage to the couple's marital relationship.

The following facts were presented at trial and are relevant to our decision on appeal. In April, 1977, defendant Tru-Valu hired Cirner as a part-time credit union clerk. At that time, Tru-Valu did not supply Cirner with any written employment policies. Cirner eventually became a full-time employee and, in January, 1978, was promoted to the position of assistant manager. As assistant manager, Cirner's responsibilities included assigning work to a clerk, Marsha Kendra.

In July, 1983, defendant Young, the manager of the credit union, fired Cirner. Young told Cirner that Cirner was making Kendra "a nervous wreck." She also accused Cirner of failing to file computer cards used to keep a record of customers' daily balances. Although Cirner denied this accusation and pleaded with Young to allow her to keep her job, Young would not relent. Cirner testified that she felt humiliated and shocked.

Although the parties lacked a written contract setting forth the terms and conditions of Cirner's employment, she felt that she had a verbal contract with Tru-Valu. Cirner's understanding of the alleged contract was that she would be employed as long as she continued to satisfactorily perform her work. At trial, Cirner admitted that Tru-Valu's employment policy did not mention job security, but she cited three occasions when Young had assured her that her job was secure. Garnetta Bethke, a loan collector for Tru-Valu, also testified that Young had assured Cirner that she need not worry about her job.

Young testified that she had decided to fire Cirner approximately six months before her actual termination date. Young could not positively say whether she had told Cirner that her job was secure.

To further support her claim that she had an employment contract for just cause termination, Cirner offered the testimony of Dr. Earl Harper, a professor of management at Grand Valley State College. Harper was produced as an expert in labor-management relations. Defendants objected to Harper's testifying. Because Harper had to be in class later that afternoon, the court ruled that it would hear the attorneys' arguments regarding the admissibility of Harper's testimony after Harper testified.

Over defendants' objection, Harper testified that an employee cannot be terminated without prior written warning, that an employer must use progressive disciplinary procedures, that tension in the office is not sufficient cause to terminate an employee, and that the law states that it is a discriminatory practice to terminate an employee with proven skills while retaining an employee with limited skills. Harper also testified as to the

meaning of "just cause" termination and stated that, in his opinion, Tru-Valu's standard employee questionnaire contained language which created a just cause employment contract between Cirner and Tru-Valu. Finally, Harper testified that he had charged Cirner less than his normal fee because he felt that defendants had so gravely mistreated Cirner.

On the day following Harper's testimony, the court heard the attorneys' arguments regarding the admissibility of Harper's expert testimony. Defendants objected to Harper's testimony on the grounds that the facts in evidence did not require expert analysis and that the matters Harper addressed were within the knowledge of the common man. The court permitted Harper's testimony to remain a part of the record, stating:

> Let me just briefly state for the record the reasons for the Court's ruling. With respect to allowing Dr. Harper to testify in general as to what constitutes just cause, I believe that would have been helpful in the industry-wide sense of the use of cause and in the business world and in a general sense of the use of that term in that business setting. Also, I felt that he should be allowed to testify as to whether or not the policies and employment application form would have lead to a just cause implied contractual provision to enter into the employee-employer relationship, as well as being allowed to testify as to the formal appraisal system and the advance warning and discipline documents that he prepared for the Court. I felt that in general those were relevant issues in this particular case. They may not be applicable as a factfinder may find it that they do not in fact exist in this case based upon their facts and findings, but I believe it's a question for the jury to decide that.

At the close of plaintiff's proofs, defendants

moved to dismiss defendant Young from the breach of contract count and moved for a directed verdict as to plaintiffs' entire complaint. The court granted the motion to dismiss Young from Count I but took the directed verdict motion under advisement. On the final day of trial, the court granted defendants' motion for directed verdicts as to the age discrimination claim in Count III but denied the motion as to the breach of contract and intentional infliction of emotional distress claims in Counts I and II, respectively.

The jury returned a special verdict, finding that Cirner had a just cause employment contract with Tru-Valu. The jury awarded Cirner damages of $60,000 on Count I and $10,000 on Count III, and awarded Joseph Cirner $5,000 on Count III. On May 7, 1985, the trial court issued its judgment on the jury verdict.

We must reverse the trial court's judgment and remand this case for a new trial because we find that the trial court abused its discretion and committed error requiring reversal in admitting the expert testimony of Dr. Harper.

MRE 702 governs the admission of expert testimony and provides:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The courts of this state have set forth three prerequisites to the admission of expert testimony: (1) the witness must be an expert; (2) there must be facts in evidence which require or are subject to examination and analysis by a competent expert; and (3) there must be knowledge in a particular

area that "belongs more to an expert than to the common man".[1]

The "critical inquiry" with regard to expert testimony is "whether such testimony will aid the factfinder in making the ultimate decision in the case".[2] In determining whether the expert testimony will aid the trier of fact, it is helpful to apply

> "the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, Expert Testimony, 5 Van L R 414, 418 (1952).[3]

In *In re Blackwell Estate*,[4] this Court stated:

> [W]here the jury would be in as good a position as the expert to determine the cause of a particular injury, the expert should not be permitted to express his opinion.

Under the foregoing principles we find that the trial court erred in admitting Harper's expert testimony. No scientific, technical, or other specialized knowledge was required to determine whether Tru-Valu wrongfully discharged Cirner in breach of a just cause employment contract. The "common man" is capable of grasping the concepts involved in the within case and of analyzing the evidence presented at trial. "[T]here was nothing so exceptional in the record of this case as to require an expert opinion on the ultimate issue for

---

[1] *O'Dowd v Linehan,* 385 Mich 491, 510; 189 NW2d 333 (1971); *Syrowik v Detroit,* 119 Mich App 343, 348; 326 NW2d 507 (1982).

[2] *People v Smith,* 425 Mich 98, 105; 387 NW2d 814 (1986).

[3] *Id.,* p 106, quoting the Advisory Committee Note to FRE 702.

[4] 50 Mich App 204, 209; 213 NW2d 201 (1973), rev'd on other grounds 391 Mich 798; 216 NW2d 419 (1974).

the jury."[5] Harper's testimony, therefore, was unnecessary and superfluous.[6] It should not have been admitted.

This Court will not reverse a trial court's exercise of its discretion to admit or exclude expert testimony absent a clear abuse of discretion.[7] In this case, we find such an abuse of discretion because, in addition to being unnecessary, Harper's testimony was highly prejudicial to defendants. Harper testified that he had charged plaintiff less than his usual fee because he felt that defendants had gravely mistreated her. This testimony as to the basis for his reduced fee was both inflammatory and irrelevant to the issues to be decided by the jury. Accordingly, we reverse the trial court's judgment and remand this case for a new trial.

On remand, the trial court should grant defendants' motion for a directed verdict against plaintiffs on the claim of intentional infliction of emotional distress. This claim is based upon allegations that: (1) defendant Young promised, but failed, to secure a raise for Cirner; (2) Young failed to provide Cirner with business information Cirner needed in order to properly do her job; (3) Young corrected Cirner's work in a way which made Cirner appear incompetent; and (4) when she fired Cirner, Young knew that Cirner was financially "strapped" due to her husband's frequent unemployment and the credit union loan Cirner had taken to finance her daughter's college education.

The trial court erred in submitting this claim to

---

[5] *O'Dowd, supra,* p 513.

[6] We note that only a small portion of Harper's testimony related to the instant parties' employment relationship. Most of his testimony focused upon employment policies adopted by companies at large and, thus, was irrelevant to the instant dispute.

[7] *Syrowik, supra,* p 347.

the jury. It is now "well settled" that damages for intentional infliction of emotional distress are not recoverable in an action for breach of an employment contract.[8] Furthermore, the record in this case does not reveal the outrageous conduct for which an actor may be liable in tort.[9]

We find no merit in the remaining issues on appeal.

Reversed and remanded for a new trial consistent with this opinion.

[8] *Valentine v General American Credit, Inc,* 420 Mich 256; 362 NW2d 628 (1984); *Khalifa v Henry Ford Hospital,* 156 Mich App 485, 499-500; 401 NW2d 884 (1986), lv den 428 Mich 902 (1987).

[9] Compare *Khalifa, supra.* See Restatement Torts (2d), § 46, Comment d, pp 72-73. Our Supreme Court has not recognized tort liability for infliction of emotional distress. *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985).