[No. 56091-9.    En Banc.    September 19, 1991.]

RONDA GAGLIDARI, *Respondent*, v. DENNY'S
RESTAURANTS, INC., *Appellant*.

*Perkins Coie,* by *Nancy Williams, Timothy J. O'Connell,* and *Bart Waldman,* for appellant.

*David A. Williams,* for respondent.

*Bryan P. Harnetiaux, Robert H. Whaley,* and *Kelby D. Fletcher* on behalf of Washington State Trial Lawyers Association, amicus curiae for respondent.

DOLLIVER, J. — Defendant Denny's appeals from a jury verdict in favor of plaintiff Ronda Gaglidari in her breach of employment contract suit. We reverse and remand for a new trial consistent with this opinion.

In September 1980, defendant hired plaintiff to work as a bartender in its Tukwila restaurant. On her first day of work, the assistant manager gave plaintiff a copy of the 1979 employee handbook and explained its provisions to her. Plaintiff signed a form acknowledging receipt of the manual and agreeing to abide by the rules.

The handbook contained provisions relating to employee benefits, expectations and termination procedures. The termination section stated that fighting on duty was grounds for immediate dismissal. For rule infractions not covered by the immediate dismissal provision, the handbook provided for counseling review and review by a certain level manager depending upon the number of years employed. Over the years, defendant revised the handbook but gave new editions only to new employees. Defendant never provided plaintiff with copies of the revised manuals,

although these new handbooks were available at the restaurant.

In 1986, defendant gave plaintiff an alcoholic beverage handbook. Plaintiff signed for this book in the same manner as the 1979 employee handbook and received training in accordance with the terms of this handbook on her responsibilities as a server of alcohol. This handbook contained the provision that fighting on company premises was grounds for immediate dismissal.

On February 7, 1987, while off duty, plaintiff visited the Tukwila Denny's. Shortly after the bartender, Beverly Gobelman, gave "last call" to the customers in the lounge, plaintiff and her friend, Maureen Connelly, who were in the dining area, entered the lounge through the employee area to get one last drink before the bar closed.

Raymond Porthen was in the lounge that night with a group seated at a table. Norman Mars arrived around 1 a.m. and sat at the bar. Ms. Gobelman had been having trouble with the group at the table being rude and had requested assistance from the unit aide several times. No manager was on duty that night. Wilma Katherine (Kathy) Hatcher, the unit aide, was the only supervisory employee.

When plaintiff and Ms. Connelly requested and obtained a drink after last call, Mr. Porthen became angry because his group had been denied drinks after last call. Mr. Porthen and plaintiff exchanged rude remarks. The unit aide asked Mr. Porthen's group to finish their drinks and leave. At this point, plaintiff approached the table and informed them it was time to go. She started to pick up empty glasses from the table. Mr. Porthen got up and hit plaintiff in the face, knocking her down. Ms. Hatcher ran into the office to call the police and did not see the rest of the incident. An altercation involving Mr. Porthen, plaintiff and Ms. Connelly ensued, the details of which are confused. Mr. Porthen left the lounge and drove himself to the

hospital where he was treated for lacerations of the scalp and right knee, contusion of the left ankle and a fractured right ankle. Plaintiff and Ms. Connelly were treated for minor injuries.

Ms. Hatcher placed a notation in the manager's log that a fight had occurred involving plaintiff. On Monday, February 9, after discussing the situation with the district manager, the manager, Douglas Worden, began investigating the incident. He talked with Kathy Hatcher, Beverly Gobelman, Ronda Gaglidari, Maureen Connelly, and Norman Mars, as well as Carol Lester, who was seated at the table with Mr. Porthen. Mr. Worden did not know the names of anyone else who was in the lounge that night and had witnessed the scene.

On Tuesday, February 10, Mr. Worden again spoke with the district manager. They concluded plaintiff should be discharged for fighting on company premises and for behavior leading to the altercation which violated company policies. The district manager discussed the matter with the regional manager at lunch. The regional manager approved the discharge based on the district manager's representation of Mr. Worden's investigation. Early Tuesday afternoon Mr. Worden fired plaintiff.

Shortly thereafter, plaintiff began seeing a psychiatrist who determined that she was suffering from acute traumatic stress syndrome. Although the psychiatrist recommended plaintiff discontinue working in environments where alcohol is served, she continued working at another bar for several months. Eventually, plaintiff and the owner decided that it was best if plaintiff left because she was having trouble dealing with a bar atmosphere.

Plaintiff brought suit against defendant for not discharging her according to the terms of her employment handbook. The case went to trial on plaintiff's claims against defendant for breach of employment contract and the tort of outrage.

Defendant moved to preclude emotional distress damages. The court granted this motion but later reversed itself. At the conclusion of the plaintiff's case, defendant moved for directed verdict. The judge granted the directed verdict in favor of defendant on the plaintiff's claim of outrage.

The jury returned a verdict for plaintiff. She was awarded $55,000 for economic damages and $75,000 for noneconomic damages. Defendant moved for judgment notwithstanding the verdict, which was denied. The court awarded plaintiff $8,000 in attorney fees pursuant to RCW 49.48.030. Defendant appealed directly to this court. Plaintiff cross-appealed on the issue of attorney fees.

The following issues are presented:

1. Whether the employee handbooks, distributed to plaintiff, for which she signed an acknowledgment agreeing to abide by their rules and policies and which contained termination procedures, created a contract between defendant and plaintiff.

2. If a contract was formed, whether defendant breached this employment contract when it discharged plaintiff.

3. Whether the trial court erred in allowing plaintiff to seek emotional distress damages for breach of employment contract.

4. Whether the trial court erred in awarding attorney fees to plaintiff for back pay pursuant to RCW 49.48.030, which provides for attorney fees for actions in which the claimant recovers wages owed.

We hold the 1979 employee handbook did give rise to a contract and that its terms were modified by the alcoholic beverage handbook plaintiff received in 1986. If defendant reached a reasonable belief supported by substantial evidence that plaintiff was fighting, there were grounds for immediate dismissal. If, however, defendant's belief plaintiff was fighting was not well founded, then defendant was

required to follow specified pretermination procedures outlined. A jury question still exists as to the reasonableness of defendant's belief plaintiff was fighting. We remand for a new trial on whether defendant breached the contract when it discharged plaintiff.

We also hold emotional distress damages are not recoverable, and find the court erred in denying defendant's motion to preclude damages for emotional distress. We do not reach the issue of prejudice from the trial judge's reservation of exceptions until after jury deliberations began. Prior to hearing argument and exceptions on his proposed jury instructions, the trial judge was in a car accident and another judge took his place. The new judge reserved exceptions for a later date and gave the jury the trial judge's proposed instructions. The exceptions to the jury instructions were taken after closing arguments and jury deliberations had commenced. There is no need to discuss the possible prejudice from this situation since a new trial will be held. Should plaintiff recover lost wages, attorney fees are appropriate under RCW 49.48.030. Since we remand the case, the award of attorney fees to plaintiff pursuant to RCW 49.48.030 will abide the result.

## I

No formal express written contract of employment exists here. Traditionally, such employment relationships are terminable at will. Generally, terminable-at-will employment may be terminated by either party without cause. *Roberts v. ARCO*, 88 Wn.2d 887, 891, 568 P.2d 764 (1977). However, plaintiff argues the employee handbook defendant provided her on her first day of work modified this relationship. Whether it did is a question of law for the court. *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 613, 762 P.2d 1143 (1988).

*Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984) is the leading case in Washington on when employee handbooks give rise to contractual obliga-

tions on the part of the employer. In *Thompson*, we held an employment relationship terminable at will can be modified by statements contained in policy manuals or handbooks. *Thompson*, 102 Wn.2d at 228. The concepts of offer, acceptance and consideration are requisite to a contract analysis of employee handbooks. *Thompson*, 102 Wn.2d at 228. Employer obligations may also arise independent of traditional contract analysis when the employer creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and the employee relies thereon. *Thompson*, 102 Wn.2d at 230.

The employee handbook defendant gave plaintiff was the 1979 version. It provides for a counseling review program for employees whose performance is unsatisfactory, or who fail to adhere to work rules. The procedure involves a meeting between the employee and the manager and the completion of documentation that identifies the problem and outlines a course of improvement. This procedure is designed to insure all employees are treated equitably and that no one is terminated without just cause.

The handbook also contains a review procedure for involuntary termination. Employees are guaranteed a review by a specified company executive based on the employee's length of service.

Finally, the handbook provides a list of activities that are grounds for immediate dismissal which justifies defendant's terminating the employee without following the normal termination review procedures. Fighting while on duty is one of the grounds for immediate dismissal.

This handbook formed a contract between defendant and plaintiff. Defendant extended plaintiff an offer by giving her the manual and explaining its provisions. Plaintiff accepted the offer by signing the acknowledgment form agreeing to abide by its provisions. The consideration is found in plaintiff actually working for defendant. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622 (Minn. 1983)

(the handbook language constitutes the offer; the offer is communicated by the dissemination of the handbook to the employee; the employee's retention of employment constitutes acceptance; and by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration). *See also* Note, *The Employment Handbook as a Contractual Limitation on the Employment At Will Doctrine*, 31 Vill. L. Rev. 335, 355-56 (1986).

Defendant argues the policies in the 1979 handbook it gave to plaintiff were superseded by subsequent revised editions of the defendant's employee handbook, and these revisions modified any contract created by the original handbook. Later editions of the handbook contained express disclaimers of contractual obligation as well as restatements of fighting as grounds for immediate dismissal, omitting the "on duty" language in the 1979 handbook. Defendant asserts that either the employment relationship was returned to terminable-at-will status, or, in the alternative, defendant did not violate the terms of the employment manual because fighting became grounds for immediate dismissal regardless of whether the employee was on or off duty.

■ An employer may unilaterally amend or revoke policies and procedures established in an employee handbook. *Thompson*, 102 Wn.2d at 229; *Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 613, 292 N.W.2d 880 (1980). However, an employer's unilateral change in policy will not be effective until employees receive reasonable notice of the change. *Bankey v. Storer Broadcasting Co.*, 432 Mich. 438, 441, 443 N.W.2d 112 (1989). In *Bankey*, the court held:

> An employer may, without an express reservation of the right to do so, unilaterally change its written policy from one of discharge for cause to one of termination at will, provided that the employer gives affected employees reasonable notice of the policy change.

*See also Bankey v. Storer Broadcasting Co.*, 882 F.2d 208 (6th Cir. 1989) (the federal court had certified the question

to the Michigan Supreme Court and so conformed to the state court's answer). The reasonable notice rule of *Bankey* is persuasive because it is unfair to place the burden of discovering policy changes on the employee. While the employee is bound by unilateral acts of the employer, it is incumbent upon the employer to inform employees of its actions.

Defendant failed to give plaintiff reasonable notice that it had changed its policies. Although she knew different handbooks were given to new employees, she never received one nor signed for one. Defendant claims that since copies of these new handbooks were usually left in the employees' lounge by new employees, plaintiff should have known of the changes. Whether the handbooks might actually be read in the employees' lounge would be wholly fortuitous; it would not be reasonable notice. Plaintiff is not bound by defendant's unilateral revisions of company policy unless defendant gave her reasonable notice of the changes.

In 1986, defendant gave plaintiff an alcoholic beverage handbook which did achieve a modification of the employment contract. Plaintiff signed an acknowledgment form agreeing to abide by the policies and procedures outlined in that handbook. Page 23 of the alcohol handbook contains the following statement:

> Do not fight or gamble on Company premises. This is grounds for immediate dismissal.

This policy statement does not differentiate between on- and off-duty status.

■ Plaintiff's receipt of the handbook satisfied the requisites of contract formation. Defendant extended an offer by providing the handbook and training plaintiff on alcoholic beverage service in accordance with the requirements contained in the handbook. Plaintiff accepted the offer by signing for the handbook and participating in the training. The consideration was plaintiff's continuation of her employment. *See Pine River State Bank v. Mettille*, 333

N.W.2d at 627 (where an employee retains employment with knowledge of new or changed conditions, although free to leave, the employee supplies the necessary consideration).

The handbook also achieved a unilateral modification of defendant's policies. Plaintiff had notice of the provisions of the handbook because she signed a form saying she read it and understood it. Thus, the handbook modified the contract because plaintiff had reasonable notice that fighting on the premises regardless of duty status was now grounds for immediate dismissal.

We find that the 1979 employee handbook created a contract, which was not modified by later revisions of the regular employee handbook because of the lack of reasonable notice to plaintiff of the policy changes. The contract was modified, however, by the 1986 alcoholic beverage handbook.

## II

At trial, defendant asserted five rule infractions to justify plaintiff's dismissal. The jury instructions treated all five infractions under the single rubric of "just cause" without differentiating between the express grounds for immediate dismissal and all other violations of company rules and policies. We find this to be error. The employee handbook and the alcoholic beverages handbook established two distinct categories of infractions. A discrete group of specified infractions, including fighting on company premises, provided grounds for immediate dismissal without any guaranteed review procedures. In all other instances of violations, defendant was entitled to dismiss an employee only for just cause after complying with the counseling review and termination review procedures. Therefore, determining whether defendant breached its contract with plaintiff involves a 2-part analysis. First, was plaintiff's dismissal justified by the immediate dismissal provision? Second, if plaintiff's immediate dismissal for fighting was not justified, did defendant comply with the

counseling review and termination procedures set forth in the employee handbook?

■■ The employment contract, as modified by the alcoholic beverage handbook, provided that fighting on company premises at any time was grounds for immediate dismissal. In order for plaintiff's discharge to have been proper under the immediate discharge provision, defendant must have conducted an adequate investigation prior to terminating plaintiff such that it reasonably and in good faith concluded plaintiff had been fighting. Whether plaintiff actually fought on company premises is collateral to the issue of proper discharge. *Adler v. Ryder Truck Rental, Inc.*, 53 Wn. App. 33, 38, 765 P.2d 910 (1988).

We interpret the term "fight" as used in the handbook to mean a hostile physical encounter between two or more persons. To be guilty of fighting, an employee must be to some degree to blame and a voluntary participant. The provision does not apply to altercations which are unavoidable and beyond the employee's control or which have not been occasioned by any improper conduct by the employee. *See* 36A C.J.S. *Fight* 392-93 (1961). Therefore, defendant acted appropriately only if it had some reasonable basis to conclude plaintiff was to some degree responsible for and a voluntary participant in the physical altercation with Mr. Porthen.

As noted above, the trial court analyzed fighting within the general framework of just cause. The jury instructions stated:

> The term "just cause" as used in the policy manual issued the plaintiff in this case means something inherent in and related to the qualifications of the employee, or a failure to properly perform some essential aspect of the employee's job function.

Instruction 13. Defendant objected to this instruction and proposed the following alternative instruction:

> [T]he phrase "just cause" means a fair and honest cause or reason regulated by the good faith of the employer.

Defendant's proposed supplemental instruction 2. The instruction proposed by defendant was derived from *Simpson v. Western Graphics Corp.*, 293 Or. 96, 643 P.2d 1276 (1982). In a decision filed nearly 3 weeks prior to this trial, we expressly adopted the *Simpson* definition of just cause as Washington law. *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 139, 769 P.2d 298 (1989). Therefore, at the time of trial, defendant's proposed instruction, not the actual instruction given, correctly stated the controlling law.

In *Baldwin*, we held:

> "[J]ust cause" is a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. We further hold a discharge for "just cause" is one which is not for any arbitrary, capricious, or illegal reason and which is based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true.

*Baldwin*, 112 Wn.2d at 139. Although *Baldwin* and *Simpson* both dealt with contracts which used the general term "just cause", we believe a similar standard should be applied where the contract provides specific grounds for dismissal. Therefore, we hold plaintiff's immediate dismissal was justified only if, prior to dismissing plaintiff, defendant reached the good faith and reasonable conclusion plaintiff was fighting on company premises and that conclusion was supported by substantial evidence.

The trial record demonstrates, and plaintiff does not challenge, that defendant's managers genuinely believed plaintiff was guilty of fighting on company premises. However, plaintiff does question whether the conclusion was reasonable in light of the evidence gathered as of the time plaintiff was dismissed. Substantial testimony at trial was devoted to determining whether plaintiff was actually guilty of fighting. However, as noted above, whether plaintiff was actually fighting is irrelevant to this action; rather, the issue is whether at the time plaintiff was dismissed defendant reasonably, in good faith, and based on substantial evidence believed plaintiff had done so.

The restaurant manager, Douglas Worden, conducted an investigation on the Monday and Tuesday following the incident. Worden spoke with plaintiff, plaintiff's friend Maureen Connelly, unit aide Kathy Hatcher, bartender Beverly Gobelman, and two customers, Norman Mars and Carol Lester. Defendant's regional manager, Jerry Fouts, testified that when Worden relayed the results of the investigation to him prior to plaintiff's dismissal, they showed plaintiff had provoked the incident and actually took part in the exchange of blows. However, when Worden reviewed his investigation at trial, the evidence of plaintiff's role in the altercation was less clear. At most, Worden's testimony indicated the pretermination investigation showed the fight began after plaintiff exchanged some unfriendly words with Porthen and attempted to clear glasses off his table. Porthen then struck plaintiff in the face, and she fell to the floor. Whether Worden's investigation disclosed plaintiff's subsequent involvement in the fight is unclear. From this record we are unable to determine on what basis defendant concluded plaintiff was to blame for or was a voluntary participant in the physical altercation with Porthen. Therefore, we cannot determine whether the conclusion plaintiff was guilty of fighting was reasonable and supported by substantial evidence at the time of termination. We remand for resolution of this issue.

The employee handbook plaintiff received identified only six grounds for immediate dismissal. In all other situations, the employee handbook obligated defendant to follow a counseling review program prior to termination and to provide an executive review of any termination.

The manager of the Tukwila Denny's identified four rule violations committed by plaintiff on the night in question in addition to fighting: entry through the service entrance, obtaining a drink after last call, acting as an employee while not on duty, and acting in an unfriendly and unprofessional manner. None of these acts qualified as grounds for immediate dismissal under the terms of the

employee handbook. Nevertheless, defendant dismissed plaintiff without first following the counseling review procedures. Therefore, plaintiff's immediate dismissal for any of those four violations was improper as a matter of law. Since defendant failed to comply with the initial counseling review procedure, we need not consider whether the termination review by the regional manager was sufficient. The only potentially legitimate basis for plaintiff's immediate dismissal was fighting on company premises. The case must be remanded to determine that question.

## III

■ The next question is whether plaintiff should be allowed to seek emotional distress damages for breach of contract. We do not believe a change is warranted either on the basis of common law, the Restatement of Contracts, Washington precedent, or public policy. The traditional common law doctrine provides that tort damages for emotional distress caused by breach of an employment contract are not recoverable. Our research indicates only one state, Colorado, has adopted a contrary view. The Colorado court, however, adopted its position without any significant analysis, merely stating the rule with bare citations to two of its own cases from the 1930's. Since the adoption of Restatement (Second) of Contracts in 1981, all states considering the question, except Colorado, have adhered to the long-standing rule which denies emotional distress damages in breach of employment contract cases.

The most active state in maintaining the traditional rule has been Michigan. In *Valentine v. General Am. Credit, Inc.*, 420 Mich. 256, 362 N.W.2d 628 (1984), the Michigan Supreme Court gave extensive consideration to the availability of emotional distress damages in breach of employment contract cases. The court reiterated its longtime position which limits emotional damages to contracts which are not primarily commercial or pecuniary, but instead involve personal rights of dignity and are incapable of adequate compensation by reference to the terms of the

contract. *Valentine*, 420 Mich. at 261-62; *see also Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 416, 295 N.W.2d 50 (1980). With respect to employment contracts, the court concluded:

> Loss of a job is not comparable to the loss of a marriage or a child and generally results in estimable monetary damages. . . .
>
> An employment contract will indeed often have a personal element. Employment is an important aspect of most persons' lives, and the breach of an employment contract may result in emotional distress. The primary purpose in forming such contracts, however, is economic and not to secure the protection of personal interests. The psychic satisfaction of the employment is secondary.
>
> Mental distress damages for breach of contract have not been awarded where there is a market standard by which damages can be adequately determined. . . .
>
> . . . [B]ecause an employment contract is not entered into primarily to secure the protection of personal interests and pecuniary damages can be estimated with reasonable certainty, . . . a person discharged in breach of an employment contract may not recover mental distress damages.

*Valentine*, 420 Mich. at 262-63. This decision has been repeatedly reaffirmed by the Michigan appellate courts. *Cirner v. Tru-Valu Credit Union*, 171 Mich. App. 163, 171, 429 N.W.2d 820 (1988); *Brewster v. Martin Marietta Aluminum Sales, Inc.*, 145 Mich. App. 641, 667-68, 378 N.W.2d 558 (1985); *Cowdrey v. A.T. Transp.*, 141 Mich. App. 617, 621, 367 N.W.2d 433 (1985).

While other states have not been as analytical in their discussions, with the exception of Colorado they uniformly adhere to the traditional rule and withhold emotional distress damages in breach of employment contract actions. Most courts simply deny the right to emotional relief in such contracts without any discussion of the level of culpable conduct. *See Patton v. University of Chicago Hosps.*, 706 F. Supp. 627, 632 (N.D. Ill. 1989) (applying Illinois law; employee sought unsuccessfully to obtain mental distress damages under breach of contract claim when he could not prove all the elements necessary for a tort claim); *ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150, 1154 (Alaska

1988) (only contract damages recoverable for wrongful discharge not amounting to a tort); *Bourque v. Wausau Hosp. Ctr.*, 145 Wis. 2d 589, 596, 427 N.W.2d 433 (Ct. App. 1988) (breach of employment contract damages limited to lost wages and expenses incurred in finding new employment); *Rogers v. Georgia Ports Auth.*, 183 Ga. App. 325, 329, 358 S.E.2d 855 (1987) (damages for mental pain and suffering not recoverable in breach of contract action absent fraud in the inception); *Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan*, 705 S.W.2d 707, 710 (Tex. Ct. App. 1985) (emotional damages not foreseeable in employment contract so not recoverable), *cert. denied*, 480 U.S. 906 (1987); *Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp.*, 106 N.M. 19, 20, 738 P.2d 513 (1987) (no recovery for emotional distress in breach of employment contract action absent showing such damages within contemplation of parties when contract entered); *Thomas v. Bienville Parish Sch. Bd.*, 475 So. 2d 125, 128 (La. Ct. App. 1985) (no recovery for emotional damages where contract has as its object anything other than intellectual gratification); *Fox v. Lummus Co.*, 524 F. Supp. 27 (S.D.N.Y. 1981) (applying New York law; limit employment contract recovery to unpaid salary less mitigation); *Fogleman v. Peruvian Assocs.*, 127 Ariz. 504, 506, 622 P.2d 63 (Ct. App. 1980) (not a tort action so emotional distress damages not recoverable; such damages cannot reasonably be presumed to have been within the contemplation of the parties when contract entered into), *disapproved in part on other grounds in Fleming v. Pima Cy.*, 141 Ariz. 149, 156 n.5, 685 P.2d 1301 (1984). The prevalence of decisions affirming the traditional rule makes any assertion that the common law has changed untenable.

Furthermore, just as the overwhelming majority of jurisdictions reject the position of the plaintiff, we do not believe the Restatement (Second) of Contracts supports the plaintiff's claims. The original Restatement provided:

> In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and *where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss.*

(Italics ours.) Restatement of Contracts § 341 (1932). The Restatement (Second) now provides:

> Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or *the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.*

(Italics ours.) Restatement (Second) of Contracts § 353 (1981).

While at first glance section 353 might appear to support the creation of a new theory of recovery, the comments, illustrations and cases cited belie this reading. Comment *a* demonstrates a strong intent to maintain the traditional focus on types of contracts, not types of breaches. Comment *a* provides:

> In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. *Breach of such a contract is particularly likely to cause serious emotional disturbance. Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance, but, if the contract is not one where this was a particularly likely risk, there is no recovery for such disturbance.*

(Italics ours.) Restatement (Second) of Contracts § 353 comment *a* (1981). The comment's clear focus is the nature of contract. The type of breach is not even discussed. Moreover, with the exception of omitting engagements to marry as a covered type of contract, comment *a* is substan-

tially the same as its predecessor in the original Restatement which was consistently interpreted to limit emotional distress damages to specific types of contracts. Rather than a break with the traditional rule, Restatement (Second) of Contracts § 353 is more properly viewed as carrying forward the traditional focus on the character of the contract. We also note no jurisdiction has suggested there is a substantive difference between section 341 and section 353.

The plaintiff characterizes Washington case law as being ripe for an expansion to allow emotional distress damages in a breach of employment contract action. She cites *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 726 P.2d 434 (1986) for the rule emotional distress damages are available in an employment context for termination in violation of public policy. However, *Cagle* dealt with the *tort* of wrongful termination of employment in violation of public policy, not breach of contract. Neither does our decision in *Cherberg v. Peoples Nat'l Bank*, 88 Wn.2d 595, 564 P.2d 1137 (1977) support plaintiff's argument there are instances where the breaching party's conduct has been such as to allow traditional tort damages on a breach of contract claim. *Cherberg* involved only the question of whether a breach of contract may also support a claim for liability in tort. *Cherberg*, 88 Wn.2d at 602. The court did not allow tort damages on the breach of contract claim, but rather only on the related intentional tort claim. Our past decisions do not support plaintiff's argument her claim for emotional damages should not be dismissed merely because she framed her action solely as a contract claim with no allegation of tortious injuries.

Plaintiff also cites two prior decisions by this state's Court of Appeals which have announced a general right to recover emotional distress damages in contract actions. Both Divisions One and Three have stated emotional distress damages are available in breach of contract actions where the breach was wanton or reckless and the

defendant would have reason to know when the contract was made that a breach would cause mental suffering for reasons other than pecuniary loss. *Thomas v. French*, 30 Wn. App. 811, 817, 638 P.2d 613 (1981), *rev'd on other grounds*, 99 Wn.2d 95, 659 P.2d 1097 (1983); *Cooperstein v. Van Natter*, 26 Wn. App. 91, 99, 611 P.2d 1332 (1980). Both *Thomas* and *Cooperstein* rely on Restatement of Contracts § 341 (1932) for their primary authority. However, as shown above, Restatement of Contracts § 341 does not support the general availability of emotional distress damages in breach of contract actions. Rather, Restatement of Contracts § 341 comment *a* focuses on the type or character of the contract. Emotional damages are available under the original Restatement only when the type or character of the contract renders emotional suffering for reasons other than pecuniary loss foreseeable from the outset. The Court of Appeals' standard goes beyond the Restatement by allowing emotional distress damages regardless of the type of contract involved whenever the breach was wanton or reckless and emotional distress was foreseeable from the outset.

Both *Cooperstein* and *Thomas* cite *Cherberg* as analogous authority. However, as discussed above, *Cherberg* simply held a breach of contract could also support a claim for the tort of intentional interference with economic relations. *Cherberg* did not allow recovery of tort damages on a breach of contract claim. Therefore, while Washington case law has recognized that a breach of contract may also lead to a related tort claim, we have yet to erase the traditional distinction between tort and contract damages in order to award damages for emotional distress on an ordinary breach of contract action. Anything to the contrary in *Thomas* or *Cooperstein* is specifically disapproved.

All authorities agree the seminal case defining contract damages is *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145, 151 (1854) in which the court stated that

damages recoverable for a breach of contract are those which

> may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.

However, under the traditional rule discussed above, the overwhelming majority of courts deny recovery for mental distress damages even though they might be foreseeable within the rule stated in *Hadley v. Baxendale, supra.* Most courts take a more restrictive approach because, under a literal application of the rule as stated in *Hadley v. Baxendale, supra,* damages for emotional distress would be recoverable in nearly every breach of contract action. As Professor Dobbs writes:

> When a defendant breaches a contract, this may and often does cause pecuniary loss to the other party, at least temporarily. It is a common experience of mankind that pecuniary loss almost invariably causes some form and degree of mental distress.

D. Dobbs, *Remedies* § 12.4, at 819 (1973). Therefore, by allowing emotional damages whenever they are a foreseeable result of the breach, the traditional predictability and economic efficiency associated with contract damages would be destroyed. In order to avoid the unpredictable and destabilizing results of such an approach, most courts have generally limited emotional distress damages to contracts uniquely intended to protect some personal interest or security and which are incapable of compensation by reference to the terms of the contract.

As the Michigan court explains the majority approach in *Valentine v. General Am. Credit, Inc.,* 420 Mich. 256, 261-62, 362 N.W.2d 628 (1984):

> In determining what damages are recoverable, the courts of this state have qualified the general rule, pursuant to which mental distress damages for breach of contract are not recoverable, with a narrow exception. Rather than look to the

foreseeability of loss to determine the applicability of the exception, the courts have considered whether the contract "has elements of personality" and whether the "damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract."

(Footnotes omitted.) The Michigan court observed earlier in *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 416, 295 N.W.2d 50 (1980) that for mental distress damages to be reasonable, the parties must have formed "a contract meant to secure [the] protection" of personal interests.

The most recent and thorough discussion of the issue of tort recovery in contract cases is in *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 693, 765 P.2d 373, 254 Cal. Rptr. 211 (1988). In the 1970's and early 1980's, the California Court of Appeals was among the most aggressive in extending tort damages to contract actions. However, in *Foley*, the California Supreme Court emphatically reversed its lower courts and denied tort damages for breach of employment contracts:

[T]he employment relationship is fundamentally contractual, and several factors combine to persuade us that in the absence of legislative direction to the contrary contractual remedies should remain the sole available relief for breaches . . . in the employment context. Initially, predictability of the consequences of actions related to employment contracts is important to commercial stability. In order to achieve such stability, it is also important that employers not be unduly deprived of discretion to dismiss an employee by the fear that doing so will give rise to potential tort recovery in every case.

Moreover, it would be difficult if not impossible to formulate a rule that would assure that only "deserving" cases give rise to tort relief. . . .

. . . .

Finally, and of primary significance, we believe that focus on available contract remedies offers the most appropriate method of expanding available relief for wrongful terminations. The expansion of tort remedies in the employment context has potentially enormous consequences for the stability of the business community.

(Footnote omitted.) *Foley*, 47 Cal. 3d at 696-99.

The impact of allowing emotional distress damages for breach of contract would indeed be enormous. It is easily predictable there would be a jury issue on emotional distress in nearly every employee discharge case and in fact nearly every breach of contract case. The contractual consensus of the parties will become secondary to an action in tort. This will represent a profound change in the law, the implication of which probably can be explained only by adverting to the "Law of Unintended Consequences". If there is to be a change of the common law, we believe a more prudential approach would be for the Legislature to consider the matter prior to such a change occurring. In the words of the *Foley* court:

> Significant policy judgments affecting social policies and commercial relationships are implicated in the resolution of this question in the employment termination context. Such a determination, which has the potential to alter profoundly the nature of employment, the cost of products and services, and the availability of jobs, arguably is better suited for legislative decisionmaking.

*Foley*, 47 Cal. 3d at 694.

The quantum leap which the plaintiff urges us to take in explicating the common law is justified neither by the cases of other jurisdictions, the Restatement, Washington law, nor public policy in dealing with employment contracts. It was error for the trial court to allow plaintiff to seek emotional distress damages in this case.

## IV

The trial court awarded plaintiff $8,000 in attorney fees under RCW 49.48.030. This statute states:

> In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: *Provided, however,* That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.

Defendant argues that plaintiff was awarded "back wages", not "wages owed". Wages owed would be for work

actually performed, while back wages are a make-whole remedy for breach of contract. Thus, defendant claims the Court of Appeals decision in *Hayes v. Trulock*, 51 Wn. App. 795, 755 P.2d 830, *review denied*, 111 Wn.2d 1015 (1988) is erroneous. Defendant requests that this court overrule *Hayes*.

In *Hayes v. Trulock, supra*, several employees brought an action for wrongful discharge and recovered damages representing the amount of wages they would have earned had they not been discharged. The court considered what the appropriate construction of the phrase "wages or salary owed" should be. RCW 49.48.030 contains no definition of wage, but RCW 49.46.010(2) defines wage as "compensation due to an employee by reason of employment". *Hayes*, 51 Wn. App. at 806. The Court of Appeals found RCW 49.48.030 to be a remedial statute, so construed it broadly to include both back pay and front pay awards. *Hayes*, 51 Wn. App. at 806.

The Court of Appeals relied on *Hanson v. Tacoma*, 105 Wn.2d 864, 719 P.2d 104 (1986). In *Hanson*, this court awarded attorney fees for a claim for back pay. Thus, the statute has been construed to include awards that were not for wages for work actually performed, but rather, money due by reason of employment.

Defendant distinguishes *Hanson* because the employee there continued working but at a lower pay level, and the claim was for the difference. It argues the fee award was for a claim based on work actually performed. Thus, it asserts the statute applies only to recover wages owed and not to actions for wrongful termination.

We reject defendant's argument. The employee in *Hanson* recovered back pay for periods during which he did not work, as well as for the time he worked at reduced pay. *Hanson*, 105 Wn.2d at 865-66. The court also emphasized that the statute provided for attorney fees "in any action" in which a person recovers wages or salary owed. *Hanson*, 105 Wn.2d at 872. Wrongful discharge actions are not necessarily excluded by the terms of the statute.

Lost wages damages are in lieu of compensation for services. They represent wages that the plaintiff would have received had she not been discharged. Thus, attorney fees are recoverable in actions for lost wages for breach of employment contract.

Plaintiff argues on her cross appeal that the award of attorney fees should be adjusted upward because all the time spent on the other issues in the case was necessitated by the wage loss claim. The trial judge allocated 40 percent of counsel's hours to the wage loss and awarded fees based on that percentage. Plaintiff argues that the hours spent should not be segregated.

■ Not only does plaintiff not cite any authority for this proposition, but also Washington law is to the contrary. Segregation is required where attorney fees are authorized for only some of the claims. *See Travis v. Washington Horse Breeders Ass'n, Inc.*, 111 Wn.2d 396, 410-11, 759 P.2d 418 (1988) (although claims overlap, the trial court must separate the time spent on the issues for which attorney fees are authorized from time spent on other issues); *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 66, 738 P.2d 665 (1987) (attorney fees should be awarded only for those services related to the cause of action which allows for fees); *Nordstrom, Inc. v. Tampourlos*, 107 Wn.2d 735, 744, 733 P.2d 208 (1987) (attorney fees should only represent reasonable amount of time and effort expended on claim for which fees are authorized); *Fisher Properties, Inc. v. Arden-Mayfair, Inc.*, 106 Wn.2d 826, 849-50, 726 P.2d 8 (1986) (when a party recovers both on claims for which fees are authorized and claims for which there is no authorization, it is proper to limit fee award to legal services provided on former claims).

The award of attorney fees is within the trial court's discretion and the award of attorney fees to plaintiff is supported by existing precedent. The interpretation adopted in *Hayes* is reasonable. *See Naches Vly. Sch. Dist. JT3 v. Cruzen*, 54 Wn. App. 388, 399, 775 P.2d 960 (1989)

(remedial statute should be liberally construed to effect its purpose, citing *Hayes* in support of finding that sick leave cash out represents wages under RCW 49.48.030). Should plaintiff prevail on remand, she may only recover attorney fees for the work related to her wage loss claim.

### CONCLUSION

The 1979 employee handbook became an employment contract when plaintiff signed for it and began working for defendant. The contract was modified by the 1986 alcoholic beverage handbook.

We remand for a new trial on the issue of whether defendant's conclusion plaintiff was guilty of fighting was reasonable, in good faith, and supported by substantial evidence. If not, there is still a jury question whether defendant had just cause under the standard enunciated in this opinion.

We reverse the trial court on its denial of defendant's motion to preclude emotional distress damages and the granting of emotional distress damages by the jury.

Under RCW 49.48.030, attorney fees are recoverable in actions for wrongful discharge where back pay or front pay is recovered as lost wages. The success of plaintiff on remand will determine what, if any, attorney fees she may recover.

DORE, C.J., DURHAM, SMITH, and GUY, JJ., and CALLOW, J. Pro Tem., concur.

UTTER, J. (concurring in part, dissenting in part) — I concur in parts I, II, and IV of the majority opinion. I must, however, dissent to part III, which concerns the availability of emotional distress damages. Emotional distress damages should be recoverable for breach of an employment contract where the employee can demonstrate that the employer's conduct was wanton or reckless, and that emotional distress was a foreseeable result of the breach.

This standard better protects an employee and his or her family from the damage caused by a wrongful discharge, and is a reasonable standard for an employer. This standard also reflects the evolution in the common law represented in the Restatement (Second) of Contracts (1981).

The majority maintains that Gaglidari should be limited to traditional contract damages because recovery for emotional distress is normally not allowed for breach of an employment contract. While the first Restatement of Contracts may support the majority's holding, the language of the second Restatement does not.

The original Restatement provided:

> In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm *and* where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss.

(Italics mine.) Restatement of Contracts § 341 (1932).

The second Restatement states:

> Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract *or* the breach is of such a kind that serious emotional disturbance was a particularly likely result.

(Italics mine.) Restatement (Second) of Contracts § 353 (1981). Thus, the first Restatement allowed recovery for emotional distress only where the nature of the contract was such that mental suffering was reasonably foreseeable. The second Restatement, however, allows *recovery* where the contract *or* the breach is of such a kind that serious emotional disturbance is a particularly likely result. Thus, the second Restatement has added an alternative scenario allowing recovery. Under the second Restatement, if the breach is of a certain nature, *i.e.*, if emotional disturbance is a particularly likely result of the

breach, recovery will be allowed. The majority's conclusion to the contrary ignores the revision of the Restatement.

The majority also neglects sound policy arguments for allowing recovery for emotional distress damages caused by wanton or reckless breaches of employment contracts. Although either party could traditionally terminate an employment contract at will, this rule has given way to several exceptions. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 226-27, 685 P.2d 1081 (1984). In *Thompson*, we noted that the traditional employment at will doctrine left employees unprotected and gave employers unfettered control of the workplace. *Thompson*, at 226. Determining that certain employer conduct would no longer be tolerated, we elected to modify the traditional rule. *Thompson*, at 233.

We also modified the traditional rule where a termination violates public policy. In *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 919, 726 P.2d 434 (1986), we held that an employee can recover emotional distress damages where the termination violates public policy.

The reckless or wanton breach of an employment contract, like the breach of a promise of specific treatment made in an employer's policy manual or the termination of an employee in violation of public policy, is also conduct we should not tolerate. When such conduct causes emotional disturbance, we should allow the injured employee to recover her damages.

Allowing recovery for emotional distress damages also furthers economic efficiency. One purpose of contract damages is to discourage economically inefficient breaches. Note, *Damage Measurements for Bad Faith Breach of Contract: An Economic Analysis*, 39 Stan. L. Rev. 161, 163 (1986) (hereinafter *Bad Faith Breach*). An economically efficient breach is one where the breaching party's gains exceed the injured party's losses. Traditional contract damages deter economically inefficient breaches by fully compensating the injured party. *Bad Faith Breach*, at 168. Where traditional damages do not fully compensate the

injured party, however, those damages do not adequately deter economically inefficient breaches. The majority opinion approves a system that fails to compensate adequately some injured parties, and by so doing undermines one of the main purposes of breach of contract damages.

As Justice Broussard notes in *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 765 P.2d 373, 254 Cal. Rptr. 211 (1988), "in many cases the employer is aware at the time of the contract that bad faith discharge will create great mental and emotional distress." *Foley*, at 702 (Broussard, J., dissenting). *See also Foley*, at 717 (Kaufman, J., dissenting) (arguing that there is a "special relationship" between employer and employee which includes elements of public interest, adhesion, and financial dependency which supports allowing tort remedies when discharge is willful or malicious). Recovery for emotional distress damages in a breach of employment contract action should be allowed where the plaintiff can demonstrate that the employer's conduct was wanton or reckless, and that emotional disturbance was a foreseeable result of the breach.

Had Gaglidari framed her cause of action as either a wrongful discharge claim or a negligent infliction of emotional distress claim she would have been able to seek recovery for emotional disturbance. *Hunsley v. Giard*, 87 Wn.2d 424, 553 P.2d 1096 (1976); *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434 (1986). She should not be denied the opportunity to present her emotional distress claim to the jury solely because she arguably did not properly frame her cause of action. Instead, the only issues should be whether Denny's' actions were wanton and reckless, and whether emotional distress was a reasonably foreseeable result of the breach.

Gaglidari met the test of the second Restatement. The court instructed the jury to consider Gaglidari's mental pain and suffering in assessing her damages only if they found that Denny's wantonly or recklessly breached the contract and that at the time the contract was formed it

was foreseeable that emotional distress would result from a breach. Clerk's Papers, at 472. Juries are presumed to follow jury instructions. *Bordynoski v. Bergner*, 97 Wn.2d 335, 342, 644 P.2d 1173 (1982). Because the jury awarded damages for emotional distress, it is evident that the jury concluded (1) that defendant's breach was wanton or reckless, and (2) that emotional distress was a foreseeable result of the breach. The jury determined that the *manner* by which Denny's breached its contract with Gaglidari was such that she was entitled to recover damages for the emotional injury she suffered. That determination follows the second Restatement's analysis. Therefore, the jury's damage award should be affirmed.

This holding accords with that of the Colorado courts. Colorado courts recognize two exceptions to the general rule that recovery for emotional distress is not allowed. The first exception identified by the Colorado courts relates to the *type* of contract. Recovery is allowed when the contract is of such a personal or special nature that emotional damages were foreseeable at the time of the contract's formation. *Trimble v. City & Cy. of Denver*, 697 P.2d 716, 731 (Colo. 1985). The second exception relates to the breaching party's *conduct*. "[A] non-breaching party to a contract may recover damages for mental anguish alone when the breach is accompanied by willful and wanton conduct." *Adams v. Frontier Airlines Fed. Credit Union*, 691 P.2d 352, 355 (Colo. Ct. App. 1984); *see also Trimble*, at 731. These exceptions are consistent with the language of the second Restatement.[1]

Over 14 years ago in Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute*, 62 Va. L. Rev. 481 (1976), the author accurately summarized the

[1]Other courts also recognize that section 353 of the second Restatement represents a change in the common law. *See, e.g., Keltner v. Washington Cy.*, 310 Or. 499, 800 P.2d 752 (1990) (recognizing that the second Restatement has a "different approach" than the first Restatement); *Asuncion v. Columbia Hosp. for Women*, 514 A.2d 1187 (D.C. 1986) (recognizing that second Restatement reflects a change in the law, but declining to adopt it on the facts of this case).

then state of the law regarding the powers of an employer to dismiss an employee. He noted, at page 532:

> The primitive legal rule that an employer could deprive an employee of his job for any reason or no reason has been repudiated in social legislation for more than forty years. A body of arbitration law protecting against unjust discipline has existed for thirty years. But the harsh legal rule continues to leave a majority of employees vulnerable to the most arbitrary, oppressive, and vindictive actions. We have been so preoccupied with conflict and collective accommodation that we have not seen the instances of individual injustice. We have arbitrated tens of thousands of discipline cases, finding nearly half to be instances of injustice, but we have closed our eyes to the tens of thousands of cases of unjust discipline suffered by employees who have no adequate forum for obtaining justice. . . .

Since that article, the Restatement (Second) of Contracts § 353 (1981) has provided the scholarly support for the expansion of the common law.

The evolution of the common law on this subject depends upon courts being persuaded that recognition of a cause of action for emotional distress is more beneficial to society than holding the parties to the limits of traditional contract damages. *See* P. Fitzgerald, *Salmond on Jurisprudence* 64 (12th ed. 1966) ("But what interests there are in a society and which of these are, and which should be, the subject of legal recognition are questions partly for sociology, partly for law and partly for ethics; and the reconciliation of conflicts between competing interests is in a broad sense part of the problem of justice.").

In Mauk, *Wrongful Discharge: The Erosion of 100 Years of Employer Privilege*, 21 Idaho L. Rev. 201, 255 (1985), the author notes:

> The common law is characterized by its resilient capacity for providing remedies for new kinds of injuries. Thus, as political, economic, and social conditions have changed, it is evident that the at-will doctrine must give way. Inasmuch as the doctrine is a creature of the common law, it is appropriate that the newly recognized exceptions to its application should come from judicial decisions. What is apparent from these decisions is the dynamic machinery of the common law, endeavoring to reconcile the changing expectations of an

unprotected work force with principles of law which have all but lost their relevance in contemporary labor relations.

For the reasons stated, the common law should provide for recovery in this case pursuant to the Restatement (Second) of Contracts § 353 (1981).

BRACHTENBACH, J. (concurring in part, dissenting in part) — I concur with Justice Utter's concurring/dissenting opinion, thus joining the majority in parts I, II and IV, except as stated hereafter. I agree with Justice Utter's dissent to part III of the majority opinion. I write separately regarding part II, majority at 436, to state my understanding of the majority's holdings, and therefore the basis on which I partially concur with part II.

My concern arises from what I perceive to be some imprecision in the use of the phrases "just cause" and "good faith". Majority, at 438. The majority correctly recognizes that the phrase "just cause" was defined in *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 139, 769 P.2d 298 (1989). "Just cause" was an essential ingredient in *Baldwin* because the employment contract used that phrase as the standard for termination.

The *Baldwin* definition of just cause is:

(a) A fair and honest cause or reason, regulated by good faith by the employer, AND

(b) One which is not for any arbitrary or capricious reason OR

(c) Any illegal reason AND

(d) Is based on facts supported by substantial evidence AND

(e) Is reasonably believed by the employer to be true. *Baldwin*, at 139.

The contract provision here in question does not speak of "just cause", but rather provides immediate termination for fighting on company premises. The majority concludes that a standard *similar* to just cause should be applied when the employment contract provides specific grounds

for termination. However, after quoting the *Baldwin* definition of just cause, it appears, at least to me, that the majority sets out quite a different standard.

The majority specifically holds that the employer's termination must rest on "the good faith and reasonable conclusion" that plaintiff was fighting on company premises. Majority, at 438. I suggest there is a substantial difference between the *Baldwin* definition and the "good faith and reasonable conclusion" standard set out in the majority. What an employer reasonably believed to be true (a semi-subjective criteria) is different from a reasonable conclusion (an objective standard). Further, by first stating the *Baldwin* definition and then recasting part of it in brief form, the standard set out in the majority seems to eliminate the elements of arbitrary, capricious or illegal motives.

I submit that the concept of "just cause" should be separated from the question presented in this case. If an employment contract provides that an employee will be terminated only for just cause, there are entirely different considerations from those presented in a case such as this one. In contrast to a contractual "just cause" requirement, when the contract specifies what particular employee acts or omissions are grounds for termination, we should be concerned with what standard the employer must meet to exercise the reserved right to discharge. We should therefore set a standard which does not invite confusion by importing *Baldwin*'s "just cause" definition.

Whether the specific ground for dismissal stated in the contract is a "reasonable" cause for termination is not the issue. If the parties — employer and employee — have agreed that particular conduct, absent illegality or public policy, is cause for termination, the reasonableness of that ground is not open for a finding that it was an "unreasonable" ground.

Also, while I disagree with the implication in the majority that the standard there adopted is similar to the

"just cause" analysis, I do not suggest adding elements like those in the *Baldwin* definition. The *Baldwin* words "fair and honest" and not "arbitrary, capricious or illegal" only confuse the ultimate question, *i.e.*, what must an employer do in terminating for a stated cause? It is obvious that the reason for discharge must not be illegal or against public policy. Termination for a stated cause implies that the termination is not arbitrary and capricious.

The standard we adopt should be as objective as possible. The appropriate standard should be one of the employer acting in good faith, but what does that mean? It means that an employer should conduct an objectively reasonable investigation to ascertain the facts. It means that the facts must lead a reasonable person to the conclusion that the employee was guilty of committing the prohibited act or not doing the omitted act. It means the employee should be told of the grounds for discharge and be given a reasonable opportunity to dispute the alleged acts or omissions. If, after taking those steps, the employer reasonably concludes that the stated grounds exist, the termination is not a wrongful discharge.

Finally, I would make clear that this opinion does not imply a covenant of good faith into an employment relationship which is entirely one terminable at will. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 227-28, 685 P.2d 1081 (1984) rejected the implied covenant of good faith in a relationship entirely terminable at will. This remains the general rule. "[W]hen it comes to at-will relationships most jurisdictions have not been willing to apply the implied covenant of good faith and fair dealing as a substantive limitation on the employer's right to discharge." 1 L. Larson, *Unjust Dismissal* § 3.05[2], at 3-29 (1991).

The discussion of good faith by the majority and this concurrence is necessarily limited to construction of a contract term, not the implication by law of a covenant otherwise absent.

ANDERSEN, J. (concurring in part, dissenting in part) — I concur with Justice Brachtenbach's concurring/dissenting opinion as it pertains to part II of the majority opinion. I concur with parts I, III and IV of Justice Dolliver's majority opinion.